STATE OF NORTH CAROLINA v. DOUGLAS WAYNE MORGAN

No. 425PA89

(Filed 14 August 1991)

1. Conspiracy § 13 (NCI4th)— criminal conspiracy defined

A criminal conspiracy is an agreement between two or more people to do an unlawful act or to do a lawful act in an unlawful manner.

Am Jur 2d, Conspiracy § 2.

2. Conspiracy § 16 (NCI4th)— criminal conspiracy—implied agreement

In order to prove conspiracy, the State need not prove an express agreement; evidence tending to show a mutual,

STATE v. MORGAN

[329 N.C. 654 (1991)]

implied understanding will suffice. Nor is it necessary that the unlawful act be completed.

**Am Jur 2d, Conspiracy §§ 10, 15.**

3. **Conspiracy § 5.1 (NCI3d)— admissibility of acts of co-conspirator**

Once a conspiracy has been shown to exist, the acts of a co-conspirator done in furtherance of a common, illegal design are admissible in evidence against all.

**Am Jur 2d, Conspiracy § 46.**

4. **Narcotics § 3 (NCI3d)— intent to sell or deliver—inference from quantity and packaging**

A jury can reasonably infer from the amount of the controlled substance found within a defendant's constructive or actual possession and from the manner of its packaging an intent to transfer, sell, or deliver that substance.

**Am Jur 2d, Drugs, Narcotics, and Poisons § 45.**

5. **Narcotics § 3 (NCI3d)— intent to sell or deliver—inference from quantity alone**

The mere quantity of a controlled substance alone may suffice to support the inference of an intent to transfer, sell or deliver.

**Am Jur 2d, Drugs, Narcotics, and Poisons § 45.**

6. **Narcotics § 4 (NCI3d)— conspiracy to possess within intent to sell or deliver—inference of intent from quantity—sufficiency of evidence**

Evidence that a witness expressly agreed to obtain one ounce, or 28.3 grams, of cocaine for defendant and that it was the intention of both that defendant possess that amount was sufficient to support defendant's conviction of conspiracy to possess cocaine with intent to sell or deliver. The ounce of cocaine that defendant conspired to possess was a substantial amount and more than an individual would possess for his personal use, and this quantity alone was thus sufficient to support the inference that defendant intended to deliver or sell the cocaine to be obtained for him by the witness.

**Am Jur 2d, Drugs, Narcotics, and Poisons §§ 45, 47.**

7. **Criminal Law § 34.7 (NCI3d)— evidence of other cocaine transactions—admissibility to show intent and motive**

> Evidence of defendant's earlier cocaine transactions with a co-conspirator was admissible to show his intent and motive in a prosecution for conspiracy to possess cocaine with intent to sell or deliver. Furthermore, the trial court did not err in finding that the probative value of this evidence outweighed its prejudicial effect. N.C.G.S. § 8C-1, Rules 403, 404(b).

**Am Jur 2d, Evidence §§ 321, 324, 325.**

ON the State's petition for discretionary review, pursuant to N.C.G.S. § 7A-31, of a unanimous decision of the Court of Appeals, 95 N.C. App. 639, 383 S.E.2d 452 (1989), reversing judgment entered by *Gardner, J.*, at the 22 August 1988 Criminal Session of Superior Court, JACKSON County. Heard in the Supreme Court 12 April 1990.

*Lacy H. Thornburg, Attorney General, by Doris J. Holton, Assistant Attorney General, for the State, appellant.*

*Smith, Bonfoey & Queen, by Frank G. Queen, for defendant-appellee.*

EXUM, Chief Justice.

Defendant was found guilty upon an indictment for Conspiracy to Possess Cocaine with Intent to Sell or Deliver, N.C.G.S. § 90-98 (1990). A unanimous panel of the Court of Appeals reversed, holding that there was no evidence in the record of defendant's intent to deliver or sell. We reverse, holding that such intent may be inferred from evidence of the quantity of the controlled substance involved in this case. Addressing another issue preserved by defendant's appeal but not addressed by the Court of Appeals, we conclude there was no error in the admission at trial of evidence of defendant's prior crimes.

The Court of Appeals noted that defendant had failed to move for dismissal at the close of the evidence. Although N.C. R. App. P. 10(b)(3) states that such failure prohibits a defendant from challenging the sufficiency of the evidence on appeal, the Court of Appeals chose to suspend that rule in the interests of justice pursuant to N.C. R. App. P. 2 and to review the sufficiency of the evidence.

Evidence presented by the State included the testimony of Kirby Queen, an employee of Gold City Amusement Park, which

was owned by defendant's father and managed by defendant during the summer of 1987. Queen testified that he had sold cocaine to defendant on four occasions between the months of May and July of that year. On each of the first three occasions defendant had purchased an "eight-ball," weighing one-eighth of an ounce or three and one-half grams. On the fourth occasion defendant purchased two "eight-balls." Queen said that a single "eight-ball" usually costs between $250 and $300; two "eight-balls" cost between $400 and $450. On each of these four occasions, Queen testified, defendant had paid him before he bought and delivered the cocaine to defendant.

Queen testified that in October 1987 defendant told him he was going on a trip to Florida and wanted to take some cocaine with him. Queen told defendant that he could get "pretty much for a low price," and the two decided upon an ounce, which Queen said he could probably get for $900. The next week Queen received a telephone call around 4 p.m. from defendant, who asked "Could you do that for me?" Queen responded that he could and arranged to come by defendant's house later that evening. Later at defendant's house, Queen went into a back bedroom with defendant, where defendant counted out forty-five twenty-dollar bills. Queen stated that defendant told him to "Do him some good, get the stuff, get the cocaine for him." Queen told defendant that he would be back with the cocaine that evening.

Queen went outside, showed the money to his waiting companions Brian Hughes and Scott Taylor, and said, "Let's go get us an ounce." The three drove to Cullowhee where they obtained three-quarters of an ounce of cocaine with the $900. Queen testified that before they headed back to deliver the cocaine to defendant they each "did a line," which meant snorting about a quarter of a gram altogether. Queen said he intended to supplement the cocaine with manitol to bring the weight up to the full ounce he had promised to defendant.

The three then headed towards Taylor's house, because Taylor expressed discomfort about being around so much cocaine. On the way, however, they were apprehended by officers, who seized the cocaine and arrested all three.

Taylor also testified, generally corroborating Queen; but Taylor said that he had heard no conversation between Queen and defendant or between Queen and Hughes because he had been in the back seat of the car listening to loud music.

Defendant testified he had never bought cocaine from Queen. He said Queen stopped by his house on 6 October 1987 to pick up a $90 advance on his pay, which defendant had noted on Queen's time card for that date.

The Court of Appeals construed this evidence as indicating that the "possession . . . with intent to sell or deliver," to which defendant and Queen had conspired, was delivery to defendant himself. Such an offense would have been "theoretically impossible" because "'intent to deliver' means intent to deliver to 'another,' not to receive delivery." 95 N.C. App. at 641, 383 S.E.2d at 453 (citing *State v. Creason*, 313 N.C. 122, 131, 326 S.E.2d 24, 29 (1985)).

In this construction of the offense and in concluding that "[t]here is no theory of prosecution according to which this defendant can be convicted for the crime with which he is charged," *id.* at 641, 383 S.E.2d at 454, the Court of Appeals erred. Taking the evidence in the light most favorable to the State and giving the State the benefit of every reasonable inference to be drawn therefrom, substantial evidence as to each element of the offense charged is apparent from the record and transcript of defendant's trial. *See State v. Brown*, 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984).

**[1-3]** A criminal conspiracy is an agreement between two or more people to do an unlawful act or to do a lawful act in an unlawful manner. *State v. Bell*, 311 N.C. 131, 141, 316 S.E.2d 611, 617 (1984). In order to prove conspiracy, the State need not prove an express agreement; evidence tending to show a mutual, implied understanding will suffice. *Id.* Nor is it necessary that the unlawful act be completed. "As soon as the union of wills for the unlawful purpose is perfected, the offense of conspiracy is completed." *State v. Bindyke*, 288 N.C. 608, 616, 220 S.E.2d 521, 526 (1975). Once a conspiracy has been shown to exist, the acts of a co-conspirator done in furtherance of a common, illegal design are admissible in evidence against all. *Id.*

Queen expressly agreed to obtain one ounce of cocaine for defendant, and it was the intention of both that defendant possess that amount. Although Queen succeeded in obtaining somewhat less than three-quarters of an ounce, this was a quantity that, considering the evidence of defendant's prior purchases and usage by Queen and his accomplices, a jury could conclude was considerably more than what might have been intended for personal use.

[4]   A jury can reasonably infer from the amount of the controlled substance found within a defendant's constructive or actual possession and from the manner of its packaging an intent to transfer, sell, or deliver that substance. *See, e.g., State v. Williams,* 307 N.C. 452, 298 S.E.2d 372 (1983) (presence of material normally used for packaging); *State v. Baxter,* 285 N.C. 735, 208 S.E.2d 696 (1974) (amount of marijuana found, its packaging, and presence of packaging materials); *State v. Rich,* 87 N.C. App. 380, 361 S.E.2d 321 (1987) (twenty grams cocaine plus packaging paraphernalia); *State v. Casey,* 59 N.C. App. 99, 296 S.E.2d 473 (1982) (possession of over 25,000 individually wrapped dosage units of LSD); *State v. Mitchell,* 27 N.C. App. 313, 219 S.E.2d 295 (1975) (possession of considerable inventory of marijuana plus other seized, "suspicious" items), *cert. denied,* 289 N.C. 301, 222 S.E.2d 701 (1976). *See also State v. James,* 81 N.C. App. 91, 344 S.E.2d 77 (1986) (cocaine of small quantity packaged in multiple envelopes); *State v. Williams,* 71 N.C. App. 136, 321 S.E.2d 561 (1984) (less than one ounce marijuana packaged in seventeen small bags); *State v. Francum,* 39 N.C. App. 429, 250 S.E.2d 705 (1979) (quantity of LSD unspecified, but found in plastic bags inside larger plastic bags).

[5]   The mere quantity of the controlled substance alone may suffice to support the inference of an intent to transfer, sell or deliver. In *State v. Thobourne,* 59 N.C. App. 584, 297 S.E.2d 774 (1982), *disapproved on other grounds, State v. Ahearn,* 307 N.C. 584, 300 S.E.2d 689 (1983), the court held that three pounds and forty-one pounds of marijuana found in the motel rooms of the defendant and a codefendant, respectively, plus insurance receipts bearing names of both were evidence sufficient to support an inference of possession with intent to sell or deliver marijuana. In *State v. Cloninger,* 37 N.C. App. 22, 245 S.E.2d 192 (1978), the defendant's possession of nearly six pounds of marijuana was held to constitute evidence of his intent to sell, although the possession of .10 ounce of hashish failed to support an analogous inference. *Cf. State v. Wiggins,* 33 N.C. App. 291, 235 S.E.2d 265 (evidence insufficient to support an inference that defendant intended to transfer where only seven ounces of marijuana seized and officers testified as to the absence of any packaging paraphernalia related to rolling or weighing), *cert. denied,* 293 N.C. 592, 241 S.E.2d 513 (1977).

In discussing what quantity of controlled substance might suffice alone to support the inference that a defendant intended to transfer it to others, this Court has construed N.C.G.S. § 90-98

*in pari materia* with other provisions of the Controlled Substances Act, N.C.G.S. §§ 90-86 through 90-113.8 (1990), particularly those provisions governing trafficking under N.C.G.S. § 90-95 (1990). In *Williams* we noted that the amount of contraband seized "was over two-thirds the amount required to support a conviction of the crime of 'trafficking in . . . heroin,'" a fact satisfying the Court that the amount seized was "a substantial amount and was more than an individual would possess for his personal consumption." *Williams*, 307 N.C. at 457, 298 S.E.2d at 376.

[6] The evidence, taken in the light most favorable to the State, tended to show that defendant had requested Queen to provide him with one ounce of cocaine, or 28.3 grams. It was Queen's intention to supplement with manitol the three-quarters of an ounce of cocaine he had been able to obtain in order to make the full ounce. The General Assembly has determined that twenty-eight grams of cocaine evinces an intent to distribute that drug on a large scale. N.C.G.S. § 90-95(h)(3) (1990). *See also State v. Proctor*, 58 N.C. App. 631, 635, 294 S.E.2d 240, 243, *cert. denied*, 306 N.C. 749, 295 S.E.2d 484 (1982), *cert. denied*, 459 U.S. 1172, 74 L. Ed. 2d 1016 (1983). As in *Williams*, we are satisfied that the full ounce defendant had conspired with Mr. Queen to possess "was a substantial amount and was more than an individual would possess for his personal consumption." *Williams*, 307 N.C. at 457, 298 S.E.2d at 376. This quantity alone, therefore, was sufficient evidence to support the inference that defendant intended to deliver or sell the cocaine to be obtained for him by Queen.

Having reversed the judgment of the trial court on the issue of the sufficiency of the evidence, the Court of Appeals found it unnecessary to address the second of defendant's issues on appeal—whether the trial court erred in admitting evidence that Queen obtained cocaine for defendant on other occasions. We address that issue here:

[7] During Queen's testimony that he had sold cocaine to defendant on at least four occasions during the summer of 1987, defendant objected on grounds of N.C.G.S. § 8C-1, Rule 404(b) (1988), whereby evidence of other crimes, wrongs, or acts is inadmissible to prove the character of a person or to show he acted in conformity therewith. Defendant contends that the trial court erred in finding that such evidence was being offered for such purposes as proof of defendant's motive and intent, *id.*, and in determining under N.C.G.S.

STATE v. MORGAN

[329 N.C. 654 (1991)]

§ 8C-1, Rule 403, that the probative value of this evidence outweighed its potential for prejudice.

This Court has held that "a careful reading of Rule 404(b) clearly shows [that] evidence of other offenses is admissible so long as it is relevant to any fact or issue other than the character of the accused." *State v. Boyd,* 321 N.C. 574, 577, 364 S.E.2d 118, 119 (1988) (quoting *State v. Weaver,* 318 N.C. 400, 403, 348 S.E.2d 791, 793 (1986) ). Ultimately, the test for determining the admissibility of evidence of such other offenses is "whether the incidents are sufficiently similar and not so remote in time as to be more probative than prejudicial under the balancing test of N.C.G.S. § 8C-1, Rule 403." *Id. See also State v. Cotton,* 318 N.C. 663, 665, 351 S.E.2d 277, 279 (1987).

The similarity and proximity of defendant's cocaine purchases from Queen earlier in the summer of 1987 to the conspiracy in October to commit the same offense on a larger scale cannot be seriously questioned: the trial court consequently did not err in concluding this evidence was admissible.

Balancing the probative value of this evidence against its potential for prejudice was within the discretion of the trial court. *E.g., State v. Penley,* 318 N.C. 30, 41, 347 S.E.2d 783, 789 (1986). A trial court may be reversed for an abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision. *State v. Thompson,* 314 N.C. 618, 626, 336 S.E.2d 78, 82 (1985).

We hold that the trial court correctly concluded that evidence of defendant's earlier cocaine transactions with Queen was admissible to show his intent and motive with regard to the conspiracy with which he was subsequently charged, and that the court's determination that the probative value of this particular evidence outweighed its prejudicial effect was well within its sound discretion.

In summary we reverse the Court of Appeals on the issue of the sufficiency of the evidence and conclude there is no error in the trial leading to defendant's conviction and sentence. The verdict and judgment of the trial court is hereby reinstated.

Reversed. No error.