STATE OF NORTH CAROLINA v. TERESA ANN SAMS

No. COA01-110

(Filed 28 December 2001)

**1. Drugs— conspiracy to sell—sufficiency of evidence**

There was sufficient evidence that defendant had conspired to sell cocaine where defendant took an undercover officer to a motel room where two men talked exclusively with the officer and sold him cocaine. The facts support a reasonable inference that defendant knew the men and that she agreed to facilitate drug transactions by bringing them customers.

**2. Drugs— sale of cocaine—acting in concert—sufficiency of evidence**

The trial court did not err in submitting the charge of selling cocaine to the jury where defendant took an undercover officer to a motel room where two men talked exclusively with the officer and sold him cocaine. The evidence reasonably supported the conclusion that defendant acted in concert with others to sell the cocaine.

**3. Drugs— conspiracy to sell—instructions—identity of person to whom cocaine sold**

There was no plain error in a prosecution for selling and conspiring to sell cocaine where defendant contended that the court erred by not instructing the jury that it had to find that the cocaine sale was to a particular person. The indictment properly alleged that defendant sold a controlled substance to a named officer, all of the evidence dealt with one sale, and there was no dispute over the identity of the buyer. Defendant did not demonstrate how the inclusion of the buyer's name in the jury instructions would have resulted in a different verdict.

**4. Drugs— mere presence—instruction not necessary**

There was no plain error in a prosecution for selling and conspiring to sell cocaine where defendant contended that the court failed to instruct the jury on mere presence. Defendant took an undercover officer to a motel room, the motel room was opened when the man inside saw defendant, and the undercover officer was immediately recognized as the potential customer. The sale would never have occurred without defendant's assistance.

STATE v. SAMS

[148 N.C. App. 141 (2001)]

Appeal by defendant from judgment entered 24 March 2000 by Judge James U. Downs in Buncombe County Superior Court. Heard in the Court of Appeals 28 November 2001.

*Attorney General Roy Cooper, by Assistant Attorney General Linda Kimbell, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Jarvis John Edgerton, IV, and Assistant Appellate Defender Daniel R. Pollitt, for defendant appellant.*

TIMMONS-GOODSON, Judge.

On 16 March 2000, a jury found Teresa Ann Sams ("defendant") guilty of selling and conspiring to sell cocaine during an undercover operation coordinated by the Asheville Police Department. At trial, Asheville police officer Danny Holden ("Officer Holden") testified that he was working undercover on the evening of 2 July 1999 with Officer Joe Palmer ("Officer Palmer"). Wearing "plain clothes" and driving an unmarked vehicle, Officer Holden drove "up and down the streets [of Asheville] looking for people" from whom he could purchase cocaine. Officer Palmer was concealed at the rear of the vehicle.

The officers first encountered defendant "on Church Street [where] she was flagging cars down, waving at people as they drove by." Officer Holden stopped the vehicle for defendant, who immediately climbed into the passenger-side seat. Officer Holden then asked defendant whether she could assist him in purchasing cocaine. In response, defendant directed Officer Holden to a local motel, assuring him that "there's someone in Room 114 that's [sic] always got some [cocaine for sale]."

Arriving at the motel, defendant offered to obtain the cocaine, but Officer Holden informed her that he preferred to make the purchase. Officer Holden then accompanied defendant to Room 114, where defendant knocked on the door. A man later identified as Leonard Leverette, Jr. ("Leverette"), drew back the window curtains of the room, and upon seeing defendant, opened the door and allowed them to enter. Leverette immediately turned to Officer Holden and asked him how much cocaine he wished to purchase. Officer Holden replied that he "wanted 30, referring to a $30 rock of crack cocaine." After making a telephone call, Leverette informed Officer Holden that "all they had was a 15," which Officer Holden agreed to purchase.

STATE v. SAMS

[148 N.C. App. 141 (2001)]

While waiting for a third party to deliver the cocaine, defendant reached into the front of her pants and retrieved a small plastic bottle. She then placed an item into the top of the bottle and, using the bottle as a pipe, lit and began smoking it. Officer Holden identified the odorous fumes arising from the bottle as crack cocaine smoke.

Shortly thereafter, a man later identified as Julius Wiley ("Wiley") arrived and immediately approached Officer Holden, who stated again that he wanted to purchase thirty dollars' worth of cocaine. Wiley then sold Officer Holden two rocks of crack cocaine for thirty dollars. Defendant stood approximately three or four feet away from Officer Holden during the transaction but did not interact with Wiley.

After acquiring the cocaine, Officer Holden left the room and returned to his vehicle. Defendant followed shortly thereafter and asked if Officer Holden would drive her back to Church Street. Defendant also requested to smoke some of the recently-purchased cocaine and inquired whether Officer Holden would like a "date." When Officer Holden informed defendant that he was not interested in either a date or in sharing the cocaine, defendant became "very angry" and accused him of "wasting [her] time" while she "could have been making a lot of money." Defendant left the vehicle after Officer Holden threatened to call law enforcement. Defendant presented no evidence at trial.

Following the jury's guilty verdict, defendant entered into a plea bargain whereby she agreed to plead guilty to cocaine possession and habitual felon status. On 24 March 2000, the trial court consolidated defendant's cases for judgment and sentenced her to one hundred fifty-five (155) months' maximum imprisonment. Defendant now appeals.

---

Defendant presents the following issues for review: whether the trial court erred in denying defendant's motions to dismiss and by inadequately instructing the jury. For the reasons stated herein, we find no error by the trial court.

[1] Defendant contends there was insufficient evidence that she conspired to sell or assisted in the sale of cocaine, and that the trial court therefore erred in denying her motion to dismiss the charges against her. We disagree.

Upon a defendant's motion to dismiss, the trial court must consider the evidence in the light most favorable to the State, allowing

every reasonable inference to be drawn therefrom. *See State v. Benson*, 331 N.C. 537, 544, 417 S.E.2d 756, 761 (1992). A motion to dismiss is proper when the State fails to present substantial evidence of each element of the crime charged. *See State v. McDowell*, 329 N.C. 363, 389, 407 S.E.2d 200, 214 (1991). "Substantial evidence is evidence from which any rational trier of fact could find the fact to be proved beyond a reasonable doubt." *State v. Sumpter*, 318 N.C. 102, 108, 347 S.E.2d 396, 399 (1986).

"A criminal conspiracy is an agreement between two or more people to do an unlawful act or to do a lawful act in an unlawful manner." *State v. Morgan*, 329 N.C. 654, 658, 406 S.E.2d 833, 835 (1991). In order to prove conspiracy, the State need not prove an express agreement; evidence tending to show a mutual, implied understanding will suffice. *See State v. Bell*, 311 N.C. 131, 141, 316 S.E.2d 611, 617 (1984). The existence of a conspiracy may be supported by circumstantial evidence. *See id.* Sale of cocaine, a controlled substance, is prohibited under the North Carolina Controlled Substances Act. *See* N.C. Gen. Stat. § 90-95(a)(1) (1999).

Giving the State the benefit of every reasonable inference in the instant case, as we must, we hold there was sufficient evidence from which a reasonable jury could find that defendant conspired with Wiley and Leverette to bring them customers for cocaine sales. The evidence showed that defendant "flagged down" Officer Holden and directed him to Room 114 at the motel, where, according to defendant, "someone . . . always [had] some [cocaine]." Defendant then offered to purchase the cocaine for Officer Holden. When Officer Holden and defendant reached Room 114, Leverette opened the door after seeing defendant. When defendant and Officer Holden entered the room, Leverette immediately directed his questions towards Officer Holden, rather than defendant. When Wiley arrived at the room, he also communicated solely with Officer Holden. Neither Leverette nor Wiley attempted to sell cocaine to defendant, even though she was obviously a consumer and thus, a potential client. As Officer Holden was a stranger to Leverette and Wiley, the jury could reasonably infer from their actions that they were acquainted with defendant, and that she had brought them drug customers in the past. Thus, Leverette and Wiley did not need to ask defendant's identity or Officer Holden's purpose in coming to Room 114. A reasonable jury could find that Leverette and Wiley understood that Officer Holden was the customer and acted accordingly. These facts support a reasonable inference that defendant knew Wiley and Leverette, and that

she agreed to facilitate drug transactions by bringing them customers. We therefore overrule defendant's first assignment of error.

[2] Defendant further argues that there was insufficient evidence that she sold cocaine or that she acted in concert with others to sell cocaine. Thus, defendant contends that the trial court erred in submitting the sale of cocaine case to the jury. We disagree.

To act in concert means to act in conjunction with another according to a common plan or purpose. *See State v. Joyner*, 297 N.C. 349, 357, 255 S.E.2d 390, 395 (1979). It is unnecessary to show that defendant committed "any particular act constituting at least part of a crime in order to be convicted of that crime under the concerted action principle so long as he is present at the scene of the crime and the evidence is sufficient to show he is acting together with another who does the acts necessary to constitute the crime pursuant to a common plan or purpose to commit the crime." *Id.*

As stated *supra*, the evidence before the trial court, taken in the light most favorable to the State, reasonably supports the conclusion that defendant conspired with Wiley and Leverette to facilitate the sale of cocaine to Officer Holden. The evidence similarly supports the inference that defendant was acting in conjunction with Wiley and Leverette according to a common plan. We hold there was sufficient evidence from which a reasonable jury could conclude that defendant acted in concert with others to commit the crime of sale of cocaine. The trial court therefore did not err in submitting the charge of sale of cocaine to the jury, and we overrule defendant's second assignment of error.

[3] By her third assignment of error, defendant argues the trial court committed plain error by failing to instruct the jury on an essential element of the crimes charged against her. Specifically, defendant contends the trial court erred by failing to instruct the jury that they had to find, beyond a reasonable doubt, that the cocaine sale was to another person, namely Officer Holden.

Defendant acknowledges that she did not object to the trial court's instructions at trial and that therefore, appellate review on this issue is limited to plain error. *See* N.C.R. App. P. 10 (c)(4) (2001). Plain error occurs where the court's instructional error is so fundamental that it has "a probable impact on the jury's finding of guilt." *State v. Odom*, 307 N.C. 655, 661, 300 S.E.2d 375, 379 (1983). Thus, in order to prevail on her claim, defendant must show that, absent the error, the jury probably would have reached a different result. *Id.*

Defendant has failed to make such a showing. Moreover, the indictment properly alleged that defendant "unlawfully, willfully and feloniously did sell to Officer W.D. Holden a controlled substance." All of the evidence presented at trial dealt with only one sale of cocaine. Further, there was never a dispute at trial over the identity of the buyer. The evidence presented showed that Officer Holden was the only possible buyer of the cocaine. Defendant has failed to demonstrate how, under these particular facts, the inclusion of the buyer's name in the jury instructions would have resulted in a different verdict. We therefore overrule defendant's third assignment of error.

[4] Defendant also argues the trial court committed plain error in failing to instruct the jury on the doctrine of "mere presence." Defendant contends that the evidence at trial showed that she was a mere bystander at the scene of the crime, and that the trial court should have instructed the jury accordingly.

When a party requests a jury instruction, the trial court is obligated to so instruct if the instruction is a correct statement of the law and the evidence supports it. *See State v. Rogers*, 121 N.C. App. 273, 281, 465 S.E.2d 77, 82 (1996), *cert. denied*, 347 N.C. 583, 502 S.E.2d 612 (1998). Defendant did not request an instruction on mere presence, however, nor was there evidence to support such an instruction. The evidence showed that defendant was much more than "merely present" at the scene of the crime, in that without defendant's assistance, the sale of cocaine to Officer Holden would have never taken place. Figuratively speaking, defendant was the key that opened Room 114 where the cocaine sale occurred. Defendant directed Officer Holden to the motel, then accompanied him to the room. Leverette opened the door to admit Officer Holden after seeing defendant, without requiring Officer Holden to provide identification or otherwise state the reason for his presence. Likewise, although Wiley did not know Officer Holden, he immediately recognized Officer Holden as the potential customer. Thus, defendant was not merely a passive bystander, but an active participant in the crime. We overrule defendant's final assignment of error.

In conclusion, we hold defendant received a fair trial, free from prejudicial error.

No error.

Judges HUDSON and TYSON concur.