STATE OF NORTH CAROLINA v. JERRY DELANE JENKINS, DEFENDANT

No. COA03-1544

(Filed 4 January 2005)

**1. Drugs— conspiracy to traffic in cocaine by possession— motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss at the close of the State's evidence the charge of conspiracy to traffic in cocaine by possession, because: (1) a reasonable juror could infer that three men riding around in a pickup truck had a relationship and were conversing with one another; (2) there was a reasonable inference that the subject of their conversation was a drug deal when the cocaine was found in a bag on the seat of the truck between defendant and one of the other men; (3) a jury could reasonably infer that the driver would not count thousands of dollars in drug money in front of defendant and the second man if they were not involved in a drug deal, nor would there be 79.3 grams of cocaine on the seat between the two passengers; and (4) viewed in the light most favorable to the State, there was sufficient evidence of both a mutual implied understanding and of other incriminating circumstances to support the elements of conspiracy and constructive possession.

## 2. Drugs— conspiracy to traffic in cocaine by possession— instruction—constructive possession

The trial court did not err in a conspiracy to traffic in cocaine by possession case by denying defendant's motion for an instruction on constructive possession, because: (1) although the trial court initially denied defendant's request for an instruction on constructive possession at the charge conference, the judge did include the pattern jury instruction on constructive possession while charging the jury on the offense of trafficking by possession; and (2) the trial court's charge on conspiracy to traffic in cocaine referred the jury to its prior instruction on trafficking by possession.

Judge ELMORE dissenting.

Appeal by defendant from judgment entered 28 May 2003 by Judge James M. Webb in Montgomery County Superior Court. Heard in the Court of Appeals 2 September 2004.

*Attorney General Roy Cooper, by Assistant Attorney General Jane T. Hautin, for the State.*

*The Turrentine Group, P.L.L.C., by Karlene Scott-Turrentine, for defendant-appellant.*

STEELMAN, Judge.

On 16 March 2002, Montgomery County Deputy Sheriff Robert George and Biscoe Police Officer Brant Phillips, as part of a local drug unit, responded to an anonymous call that Romeo Meza had a large quantity of cocaine coming into the city of Biscoe. George and Phillips saw Meza's truck and proceeded to pull the vehicle over for a traffic stop. Along with the driver Meza, two other male passengers were in the cab of the pick-up truck: defendant, seated next to the passenger door, and Prentice Southerland, seated in between Meza and defendant. Other officers were called in to assist with the stop.

Deputy George approached the truck on the driver's side while Officer Phillips and Officer Phillip Chappell, also of the Biscoe Police Department, approached the passenger's side. At the driver's side window, Deputy George noticed that Meza had a "large sum of cash on his lap," and "asked Mr. Meza to step out of the vehicle." Deputy George testified that

[t]he money was in Mr. Meza' lap as if he was counting. It was folded out and there was numerous hundred-dollar bills visible. And when I asked him to get out of the vehicle, he tried to pick it up and put it back in his pocket.

The amount of money in Meza's lap was approximately $2,800.00. As Meza opened the driver's door, Deputy George observed a semiautomatic pistol inside the door panel.

Upon seeing the gun, later determined to be loaded with a round in the chamber, Deputy George "[i]mmediately handcuffed Mr. Meza and indicated to the other officer there was a firearm in the vehicle." At that point, Meza was passed back to other officers on the scene and Officers Phillips and Chappell, who were already at the passenger's side of the truck, proceeded to remove defendant and Southerland.

As defendant was "sliding out," Deputy George saw "a plastic bag on the front seat between Mr. Southerland's right leg and Mr. Jenkins' left leg," which was later determined to contain 51.5 grams of cocaine base and 27.8 grams of cocaine hydrochloride. Defendant and Southerland were also placed into custody and taken to the Biscoe Police Department.

Officer Chappell's testimony was consistent with that of Deputy George: the bag was not visible when both defendant and Southerland were in the truck, but "[a]s [defendant] was getting out, as Sergeant Phillips was asking them to get out and as they were getting out of the vehicle, it was laying there in the seat." Officer Chappell described the bag as a "clear plastic bag . . . [that was] wrapped up . . . [and] knotted up." Although Officer Chappell testified he could not see into the bag, he stated that in his experience "drugs are packaged that way." He also testified that while in custody at jail, Southerland attempted to dispose of some cocaine in the toilet.

Officer Phillips testified that after he asked defendant to step out of the car and placed him in custody, Officer·Chappell began to assist Southerland out of the car. "And before he got to get [Southerland] out of the vehicle, he noticed a bag, which he handed to me." Officer Phillips testified the bag was rolled up, not clear, and that he could not ascertain its contents until he took them out. The bag itself was described by the forensic chemist as a "vegetable grocery style bag that . . . then [had] three . . . other bags that were knotted little plastic bags containing the material."

On 27 May 2002 defendant was tried in Montgomery Superior Court for trafficking in cocaine by possession of at least 28 grams but less than 200 grams, trafficking in cocaine by manufacturing (of the same amount), conspiracy to traffic in cocaine by possession (of the same amount), and possession of cocaine. Defendant was found guilty of conspiracy to traffic in cocaine, and acquitted of the remaining charges. He received an active sentence of 35 to 42 months. Defendant appeals.

At the close of the State's case, defendant made a motion to dismiss all charges for lack of sufficient evidence. This motion was denied. The defendant put on no evidence, and renewed his motion to dismiss. It was also denied. Our review is limited to the conviction for conspiracy to traffic in cocaine.

[1] In defendant's first and second assignments of error, he argues that the trial court erred in denying his motion to dismiss at the close of all the evidence because there was insufficient evidence to support the charge of conspiracy to traffic in cocaine by possession. We disagree.

In reviewing a trial court's denial of a defendant's motion to dismiss at the close of the State's evidence, we view the evidence in the light most favorable to the State. *State v. Sams*, 148 N.C. App. 141, 143-44, 557 S.E.2d 638, 640 (2001); *State v. Brown*, 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984). The State bears the burden of proving each element of the offense charged and must show substantial evidence of each element. *State v. Brinkley*, 10 N.C. App. 160, 161, 177 S.E.2d 727, 728 (1970).

"Substantial evidence is evidence from which any rational trier of fact could find the fact to be proved beyond a reasonable doubt." *State v. Sumpter*, 318 N.C. 102, 108, 347 S.E.2d 396, 399 (1986). The State may meet this burden by either direct or circumstantial evidence. The law makes no distinction between the weight to be accorded to direct or circumstantial evidence. *State v. Salters*, 137 N.C. App. 553, 557, 528 S.E.2d 386, 390 (2000) (citation omitted).

"In order to prove conspiracy, the State need not prove an express agreement; evidence tending to show a mutual, implied understanding will suffice. Nor is it necessary that the unlawful act be completed." *State v. Morgan* 329 N.C. 654, 658, 406 S.E.2d 833, 835 (1991) (internal citations omitted). A conspiracy may be shown by circumstantial evidence, or by a defendant's behavior. *State v.*

*Harris,* 145 N.C. App. 570, 579, 551 S.E.2d 499, 505 (2001), *disc. rev. denied, appeal dismissed* 355 N.C. 218, 560 S.E.2d 146 (2002) (citation omitted). Conspiracy may also be inferred from the conduct of the other parties to the conspiracy. *State v. Batchelor,* 157 N.C. App. 421, 427, 579 S.E.2d 422, 427 (2003), *disc. rev. denied,* 357 N.C. 462, 586 S.E.2d 101 (2003) (citation omitted). "[P]roof of a conspiracy [is generally] established by a number of indefinite acts, each of which, standing alone, might have little weight, but, taken collectively, they point unerringly to the existence of a conspiracy." *Id.* (internal quotations and citations omitted).

"Trafficking in cocaine by possession of at least 28 grams but not more than 200 grams of cocaine is a violation of N.C. Gen. Stat. § 90-95(h)(3)(a). Possession of the drugs need not be exclusive." *State v. Outlaw,* 159 N.C. App. 423, 426, 583 S.E.2d 625, 628 (2003) (citation omitted). "It is well established in North Carolina that possession of a controlled substance may be either actual or constructive. A person is said to have constructive possession when he, without actual physical possession of a controlled substance, has both the intent and the capability to maintain dominion and control over it." *State v. Jackson,* 103 N.C. App. 239, 243, 405 S.E.2d 354, 357 (1991) (internal citations omitted).

> As the terms "intent" and "capability" suggest, constructive possession depends on the totality of circumstances in each case. No single factor controls, but *ordinarily the question will be for the jury.* . . . The fact that a person is present in a [vehicle] where drugs are located, nothing else appearing, does not mean that person has constructive possession of the drugs. . . . [T]here must be evidence of other incriminating circumstances to support constructive possession.

*State v. James,* 81 N.C. App. 91, 93, 344 S.E.2d 77, 79 (1986) (internal citations omitted) (emphasis added).

In order to find defendant guilty of conspiracy to traffic in cocaine in the instant case, the State must prove that defendant entered into an agreement to traffic by possessing cocaine weighing at least 28 grams but less than 200 grams, and intended the agreement to be carried out at the time it was made. *See State v. Diaz,* 155 N.C. App. 307, 319, 575 S.E.2d 523, 531 (2002), *cert. denied,* 357 N.C. 464, 586 S.E.2d 271 (2003). Defendant argues that there was insufficient evidence to support either the element of agreement, or the element of possession.

In this matter, the defendant stipulated that the stop of the pickup truck by the officers was valid and legal, and the amount of cocaine is not in dispute. When the truck was stopped by the officers, Meza was driving, Southerland was seated in the middle and defendant was next to the passenger window. They were seated together on the bench seat of the pickup truck. Meza had a pile of money in his lap. When Meza exited the vehicle, there was a pistol plainly visible in the driver's door of the truck. When defendant exited the truck, there was a bag of drugs *on the seat between defendant and Southerland.*

We hold that this evidence was sufficient to submit the charge of conspiracy to traffic in cocaine by possession to the jury. A reasonable juror could infer that three grown men riding around in a pickup truck had a relationship and were conversing with one another. With evidence tending to show that Meza was in the process of counting thousands of dollars in cash when he was pulled over, and that 27.8 grams of powdered cocaine, 51.5 grams of crack cocaine and a loaded handgun were in the open cabin of the truck, there is also a reasonable inference that the subject of their conversation was a drug deal and not something more innocuous. This is particularly true in light of the fact that the cocaine was found in a bag on the seat of the truck between defendant and Southerland. A jury could reasonably infer that Meza would not count thousands of dollars in drug money in front of defendant and Southerland if they were not involved in a drug deal, nor would there be 79.3 grams of cocaine on the seat between the two passengers. "In 'borderline' or close cases, our courts have consistently expressed a preference for submitting issues to the jury . . . ." *Jackson,* 103 N.C. App. at 244, 405 S.E.2d at 357 (internal quotations and citations omitted) (Case finding adequate evidence to submit trafficking in cocaine and conspiracy to traffic in cocaine to the jury on facts similar to the instant case). Viewed in the light most favorable to the State, there was sufficient evidence of both a mutual, implied understanding, and of other incriminating circumstances to support the elements of conspiracy and constructive possession. These assignments of error are without merit.

[2] In his third assignment of error, defendant asserts that the trial court erred in denying defendant's motion for an instruction on constructive possession. We disagree.

"Every substantial feature of the case arising on the evidence must be presented to the jury even without a special request for instructions on the issue." *State v. Watson,* 80 N.C. App. 103, 106, 341 S.E.2d 366, 369 (1986) (citation omitted). The trial court initially

denied defendant's request for an instruction on constructive posses-
sion at the charge conference. However, in charging the jury on the
offense of trafficking by possession, the judge did include the pattern
jury instruction on constructive possession (NCPI Criminal 104.41).
The judge's charge on conspiracy to traffic in cocaine referred the
jury to his prior instruction on trafficking by possession. This com-
plied with defendant's request for an instruction on constructive pos-
session. This assignment of error is without merit.

NO ERROR.

Judge CALABRIA concurs.

Judge ELMORE dissents.

ELMORE, dissenting.

I must respectfully dissent from the majority opinion in this case
because I cannot hold that the State presented sufficient evidence of
conspiracy. Accordingly, I would vacate defendant's conviction for
conspiracy to traffic in cocaine by possession.

On appeal we review the evidence supporting a conviction of con-
spiracy to traffic in cocaine in the light most favorable to the State.
*State v. Sams*, 148 N.C. App. 141, 144, 557 S.E.2d 638, 641 (2001).

A motion to dismiss is proper when the State fails to present sub-
stantial evidence of each element of the crime charged. *See State
v. McDowell*, 329 N.C. 363, 389, 407 S.E.2d 200, 214 (1991).
'Substantial evidence is evidence from which any rational trier of
fact could find the fact to be proved beyond a reasonable doubt.'
*State v. Sumpter*, 318 N.C. 102, 108, 347 S.E.2d 396, 399 (1986).

*Id.* In order to find defendant guilty of conspiracy to traffic in
cocaine, the state must prove that defendant entered into an agree-
ment to traffic in cocaine (for a specified amount), and intended the
agreement to be carried out at the time which it was made. *See State
v. Valentine*, 357 N.C. 512, 522, 591 S.E.2d 846, 855 (2003); *State v.
Diaz*, 155 N.C. App. 307, 319, 575 S.E.2d 523, 531 (2002), *cert. denied*,
357 N.C. 464, 586 S.E.2d 271 (2003); *State v. Harris*, 145 N.C. App.
570, 579, 551 S.E.2d 499, 504-05 (2001).

The essential element of conspiracy is that of the agreement.
Therefore, for the denial of defendant's motion to dismiss to be

proper, there must be evidence of an agreement which the jury could find beyond a reasonable doubt. *See Sams*, 148 N.C. App. at 143-44, 557 S.E.2d at 641. Even in the light most favorable to the State, and recognizing the inherent difficulty of proving conspiracy, I cannot find substantial evidence that the defendant *agreed* to traffic in cocaine.

There was no evidence presented as to whether defendant had a previous relationship with Southerland or Meza, or even that he knew them. *Cf. Sams*, 148 N.C. App. 141, 557 S.E.2d 638 (evidence that defendant and drug dealer had worked together in the past to facilitate cocaine sales was enough to support a denial of a motion to dismiss a conspiracy charge). There was no evidence presented that defendant even spoke with the other two men. *Cf. State v. Morgan*, 329 N.C. 654, 406 S.E.2d 833 (1991) (multiple prior transactions and conversations between defendant and others regarding the sale and delivery of cocaine was sufficient to support an inference of a conspiracy); *State v. Batchelor*, 157 N.C. App. 421, 579 S.E.2d 422 (informant testified to previous conversations with defendant supporting inference of agreement), *disc. review denied*, 357 N.C. 462, 586 S.E.2d 101 (2003); *State v. Diaz*, 155 N.C. App. 307, 575 S.E.2d 523 (2002) (co-defendants had multiple conversations with one another regarding the sale of drugs), *cert. denied*, 357 N.C. 464, 586 S.E.2d 271 (2003).

There was no evidence presented as to how long the three men had been in the truck before being stopped by police. There was no evidence presented that defendant could see either the drugs in the seat or the gun in the pocket of the door opposite him. Defendant did not have drugs on his person, like Southerland did, nor did he have possession of a large sum of money, like Meza did. *Cf. State v. Harris*, 145 N.C. App. 570, 551 S.E.2d 499 (2001) (inference of conspiracy where defendant was found with a large amount of money on him and was sharing a hotel room with another person who had drugs on him at the time of arrest).

The majority relies on *Batchelor* to assert that a conspiracy may be inferred from the conduct of the other parties to the conspiracy. Here, in order to infer conspiracy from the *other* parties, the majority is stating that mere presence with others who may be in agreement to bring about a certain result is substantial evidence of an agreement with them. The *Batchelor* court did not go that far, and I do not think this panel should either.

In *Batchelor*, evidence reviewed in the light most favorable to the State showed that the defendant had agreed to sell drugs to a confidential informant because the two set up a face-to-face location for the buy. *Batchelor*, 157 N.C. App. at 427-28, 579 S.E.2d at 427. When the defendant came to the agreed-upon location, he brought a passenger with him. Despite pat-down searches, no drugs were recovered on either the defendant or his passenger; yet, after placing the defendant and his passenger in separate patrol cars, drugs were later found in the patrol car of the passenger. *Id.* Evidence further showed that the passenger was the only person who could have placed the drugs in the car, creating an inference that the drugs were on his person while he was with the defendant. *Id.* That, *plus* the conversations with the confidential informant in which the two agreed to a prearranged meeting location was sufficient evidence to send a conspiracy charge to the jury. *Id.*

Here, the evidence presented at trial, in congruence with *Batchelor*, would support an inference of a conspiracy between Meza and Southerland, who was later disposing of drugs while in custody, but not between defendant and Meza or defendant and Southerland. Defendant Batchelor had at least made several phone calls relating to the sale of cocaine that, together with the conduct of his passenger, would support an inference of conspiracy: upon arrival at the location the only drugs apparently to sell were located on the passenger. *See State v. Valentine*, 357 N.C. 512, 522, 591 S.E.2d 846, 855 (2003) ("[I]n establishing a criminal conspiracy, direct proof is not required. . . . 'It may be, and generally is, established by a number of indefinite acts, each of which, standing alone, might have little weight, but, taken collectively, they point unerringly to the existence of a conspiracy.' "(citations and emphasis omitted)).

The only *act* proven on behalf of the defendant to show agreement between he and Meza or Southerland was that of being in the truck. Mere presence cannot stand as the only act linking a defendant to a conspiracy. *See State v. Merrill*, 138 N.C. App. 215, 221, 530 S.E.2d 608, 612 (2000) (Upon evaluating the State's argument that the conduct of others supported a jury question as to conspiracy the Court determined that "[m]ere passive cognizance of the crime or acquiescence in the conduct of others will not suffice to establish a conspiracy.")

Conclusively, I would hold that when marshaled together there was no evidence presented which could support a finding beyond a reasonable doubt that defendant agreed with either Meza or

Southerland to traffic in cocaine. As such, I would reverse the trial court's denial of defendant's motion to dismiss the charge of conspiracy to traffic in cocaine, and, since defendant was only convicted of this offense, I would vacate the trial court's judgment against him. Accordingly, I would not reach defendant's other assignments of error.