STATE OF NORTH CAROLINA
v.
FRANCISCO CHIU SILVA.
No. COA07-1345
Court of Appeals of North Carolina
Filed December 16, 2008
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Ann W. Matthews, for the State.
Sofie W. Hosford for defendant appellant.
McCULLOUGH, Judge.
A jury found defendant Francisco Chiu Silva guilty of trafficking in cocaine by transportation of 28 grams or more but less than 200 grams, trafficking in cocaine by possession of 28 grams or more but less than 200 grams, trafficking in cocaine by possession of 400 grams or more, and conspiracy to traffic cocaine by possession of 28 grams or more but less than 200 grams. The trial court consolidated his offenses into two judgments and sentenced him to consecutive prison terms of 35 to 42 months and 175 to 219 months, as prescribed by N.C. Gen. Stat. § 90-95(h)(3)(a), (c) (2007). Defendant gave notice of appeal in open court. At defendant's trial, Raleigh Police Officer Anthony H. Pennica testified that informant Victor Sanchez arranged a controlled buy of cocaine at El Cerro Grande restaurant on the afternoon of 28 September 2005, with individuals known to Sanchez as "Francisco and Alex." Pennica met Sanchez at the police station prior to the transaction, searched him and his van for contraband, and equipped him with an audio transmitter. Pennica also provided Sanchez with $1,600.00 in marked "flash money" to purchase two ounces of cocaine.
Pennica followed Sanchez to the restaurant and saw him park in a prearranged location in the parking lot. Within a couple of minutes, defendant drove into the lot in a Toyota Corolla and stopped two rows behind Sanchez's van. Alex Pineda, who was seated next to defendant, exited the Corolla and got into the van with Sanchez. Defendant parked beside the van on the driver's side, got out of the car, and stood by the trunk. After receiving the take-down signal from Sanchez, officers converged on the scene and detained defendant, Pineda, and Sanchez. They recovered the $1,600.00 in flash money from Pineda and found two clear plastic sandwich bags of powder cocaine in the van's center console. Each bag was sealed by a knot and contained approximately one-ounce of cocaine. The total weight of the cocaine in the two knotted sandwich bags was 55.49 grams or 1.95 ounces.
Police seized two cellular phones from defendant. In his wallet, they found $800.00 in cash and business cards from A-Plus Storage at 5000 Atlantic Avenue and Safety Store Mini Storage("Safety Store") at 4204 Capital Boulevard. Written on the front of the card from A-Plus Storage was a numerical code which allowed access to the front gate of the facility. The back of the card listed "Doorway H6, Building H, Unit 199." Another card in defendant's wallet contained the combination for the doorway leading to the unit. From the Corolla's interior, officers recovered a set of keys from the ignition and the vehicle's registration bearing defendant's name. On the set of keys was a MasterLock key which opened the lock on the storage unit.
After agreeing to cooperate with police, Pineda claimed to have observed additional cocaine inside defendant's apartment at 5000-D Sedgewick Drive within the past twenty-four hours, when he and defendant went to the apartment to obtain the cocaine for Sanchez. Based on this information, Pennica obtained a search warrant for the apartment. Defendant's girlfriend, Karen Valencia Flores, arrived at the apartment during the search and directed police to a bedroom closet containing men's clothing, between 68.4 and 73.6 grams of cocaine packaged in three knotted, plastic sandwich bags and four corner bags, a digital scale, boxes of plastic sandwich bags, and a loaded Charter Arms .32 caliber handgun. In the laundry closet, officers found additional .32 caliber ammunition and two receipts for handgun purchases. One of the receipts recorded defendant's purchase of a Patriot P-14 firearm from Davi's Indoor Range and Shooting Sports on 9 June 2005. Flores provided the officers with a copy of the apartment's lease signed by Francisco Silva. Pineda also claimed to have seen powder cocaine inside the storage unit on Atlantic Avenue, when he visited the unit with defendant on the day of the transaction. After searching the Sedgewick Drive apartment, Pennica obtained a search warrant for unit 199 at Building H, Doorway H6 at A-Plus Storage, the same unit written on the back of the business card found in defendant's wallet at the time of his arrest. Pennica opened the main gate to the storage facility with the access code written on the business card in defendant's wallet. Pennica used the combination written on the second card in defendant's wallet to get through the doorway leading to the specific unit. The Masterlock key found on defendant's key set opened the lock on the storage unit. Inside, Pennica found three or four unopened boxes of pots and pans and a box containing 1,096.14 grams of cocaine apportioned in 39 knotted, plastic sandwich bags. Officers later obtained a copy of the unit's lease agreement, which identified the lessee as Francisco Silva. The usage log maintained by the facility's management assigned the name "Silva" to the gate access code found in defendant's wallet.
When Pennica returned to the police station with the cocaine seized from A-Plus Storage, defendant asked to speak to him. Defendant told Pennica that he had another storage unit and accompanied the officer to Safety Store at 4204 Capital Boulevard. The management produced a lease agreement in the names of defendant and Carlos Paz. Defendant opened the unit for Pennica, who found only a "single box of pots and pans, very similar to the same boxes" he observed at A-Plus Storage.
Pineda consented to a search of his apartment, which yielded no contraband. Moreover, none of the keys in Pineda's possession at the time of his arrest fit the locks to the storage units searched by Pennica on 28 September 2005. Pineda continued to cooperate with law enforcement after 28 September 2005. He used a phone number stored in the yellow Nextel phone seized from defendant to call suspects in Johnston County, which led to additional arrests by the Johnston County Sheriff's Department on 29 September 2005. Pineda was shot on 1 October 2005 while assisting Raleigh police in another case and later fled to Mexico. Defendant testified that he was living with Flores in the Sedgewick Drive apartment at the time of his arrest. He was Pineda's friend and had known him for several years. Defendant rented the storage unit on Capital Boulevard for his personal use but had rented the unit on Atlantic Avenue for Pineda, because Pineda did not have the required photo identification card. Defendant had never used this storage unit and "didn't go there except to pay the rent." On the morning of 28 September 2005, Pineda phoned defendant and "invited [him] out to eat" at El Cerro Grande. Defendant picked up Pineda at his apartment and drove to the restaurant. Contrary to Pennica's testimony, defendant insisted that he did not possess a key to the Atlantic Avenue storage unit or own a yellow Nextel phone. The police seized the key and phone from Pineda at the time of their arrest. Defendant could not explain why the number on the yellow Nextel phone was listed as his phone number on the lease agreements at A-Plus Storage and Safety Store. Defendant further averred that he had $600.00 in his wallet, rather than $800.00, having just cashed his paycheck. He had "never bought nor sold cocaine" and "did [not] know that Alex Pineda was a drug dealer." Defendant was unaware that the cocaine, scale, and gun were in his apartment and had never seen these items prior to trial. He had never purchased or handled a gun.
In relation to the transaction at El Cerro Grande, the jury found defendant guilty of trafficking cocaine by transportation and possession of 28 grams or more but less than 200 grams and of conspiring to traffic in cocaine by possession of 28 grams or more but less than 200. Defendant was also found guilty of trafficking cocaine by possession of 400 grams or more in relation to the cocaine found in the storage unit. The jury acquitted defendant of trafficking in the cocaine found in his Sedgewick Drive apartment.

I.
On appeal, defendant first challenges the trial court's denial of his motion to dismiss the conspiracy charge for lack of sufficient evidence. He argues that the State adduced no evidence that he entered into an agreement with Pineda to sell the cocaine to Sanchez. He suggests that the State needed Pineda to testify in order to prove the existence of an agreement to sell cocaine.
In reviewing the denial of a motion to dismiss, we must determine whether the evidence, viewed in the light most favorable to the State, would allow a reasonable juror to find defendant guilty of the essential elements of the offense beyond a reasonable doubt. State v. Warren, 348 N.C. 80, 102, 499 S.E.2d 431, 443, cert. denied, 525 U.S. 915, 142 L. Ed. 2d 216 (1998), cert. denied, 359 N.C. 286, 610 S.E.2d 714 (2005).
"Both competent and incompetent evidence must be considered. Additionally, except in those instances in which it is favorable to the State, defendant's evidence should be disregarded." State v. Lyons, 340 N.C. 646, 658, 459 S.E.2d 770, 776 (1995). The evidence need not exclude every reasonable hypothesis of innocence. State v. Lee, 348 N.C. 474, 488, 501 S.E.2d 334, 343 (1998). "Ultimately, the question for the court is whether a reasonable inference of defendant's guilt may be drawn from the circumstances." Id. "`In "borderline" or close cases, our courts have consistently expressed a preference for submitting issues to the jury.'" State v. Jackson, 103 N.C. App. 239, 244, 405 S.E.2d 354, 357 (1991)(citations omitted), aff'd, 331 N.C. 113, 413 S.E.2d 798 (1992).
"In order to find defendant guilty of conspiracy to traffic in cocaine in the instant case, the State must prove that defendant entered into an agreement to traffic by possessing cocaine weighing at least 28 grams but less than 200 grams, and intended the agreement to be carried out at the time it was made." State v. Jenkins, 167 N.C. App. 696, 700, 606 S.E.2d 430, 433, aff'd, 359 N.C. 423, 611 S.E.2d 833 (2005). A conspiracy may take the form of an explicit agreement or a mutual implied understanding between the parties. State v. Johnson, 164 N.C. App. 1, 17, 595 S.E.2d 176, 185, disc. review denied, 359 N.C. 194, 607 S.E.2d 659 (2004). In the absence of direct evidence, the existence of a criminal conspiracy may be gleaned from "the situation of the parties and their relations to each other, together with the surrounding circumstances, and the inferences deducible therefrom[.]" State v. Horton, 275 N.C. 651, 660, 170 S.E.2d 466, 472 (1969) (citation omitted), cert. denied, 398 U.S. 959, 26 L. Ed. 2d 545, reh'g denied, 400 U.S. 857, 27 L. Ed. 2d 97 (1970). "Ordinarily the factual issue of the existence or nonexistence of a conspiracy is for the jury." State v. Collins, 81 N.C. App. 346, 350, 344 S.E.2d 310, 314, appeal dismissed, 318 N.C. 418, 349 S.E.2d 601 (1986).
We find substantial evidence that defendant and Pineda conspired to traffic in cocaine by possession. The State's proffer showed that Sanchez arranged to purchase two ounces of cocaine for $1,600.00 in the El Cerro Grande parking lot on the afternoon of 28 September 2005. Defendant drove Pineda to the parking lot at the appointed time. After dropping off Pineda some distance from Sanchez's van, defendant drove next to the van and parked. The circumstantial evidence showed that Pineda, after entering the van, gave Sanchez the 55.49 grams of cocaine found in the center console of the van in exchange for $1,600.00 in marked bills provided by police. The cocaine was packaged in two one-ounce portions in clear plastic sandwich bags sealed by knots. At the time of his arrest, defendant was in possession of the gate access code, door combination, and key to a self-storage unit containing 1,096.14 grams of cocaine packaged in one-ounce portions in 39 knotted plastic sandwich bags. In the bedroom closet of the apartment defendant shared with Flores, police found boxes of plastic sandwich bags, a digital scale, and three knotted plastic sandwich bags containing roughly one ounce each of cocaine. Defendant was the sole lessee of both the apartment and the storage unit where the additional cocaine was found. We note that, in cross-examining Officer Pennica, defendant elicited evidence that Pineda claimed the cocaine he sold to Sanchez had been obtained from defendant's apartment within twenty-four hours of the sale. From these circumstances, a jury could reasonably infer the existence of an agreement between defendant and Pineda to possess the cocaine they delivered to Sanchez. See Jackson, 103 N.C. App. at 243, 405 S.E.2d at 357 (finding sufficient evidence of conspiracy to traffic in cocaine where, after the seller negotiated the transaction and drove himself away from the site, the defendant drove the seller back to the site and "remained seated in the car looking around the parking lot" while the seller delivered the cocaine).

II.
Defendant also challenges the denial of his motion to dismiss the trafficking by possession charge related to the cocaine found at A-Plus Storage. In order to sustain this charge, the State was obliged to prove that defendant knowingly possessed cocaine weighing at least 400 grams. N.C. Gen. Stat. § 90-95(h)(3)(c) (2007). Possession of a controlled substance may be actual or constructive. Jackson, 103 N.C. App. at 243, 405 S.E.2d at 357. "A person is said to have constructive possession when he, without actual physical possession of a controlled substance, has both the intent and the capability to maintain dominion and control over it." Id. "`[E]vidence the defendant has exclusive possession of the property in which the drugs are located'" gives rise to a reasonable inference of constructive possession. State v. Lakey, ___ N.C. App. __, ___, 645 S.E.2d 159, 161 (2007) (quoting State v. Frazier, 142 N.C. App. 361, 367, 542 S.E.2d 682, 687 (2001)). "Additionally, constructive possession can be shown with `evidence the defendant has nonexclusive possession of the property where the drugs are located' so long as `there is other incriminating evidence connecting the defendant with the drugs.'" Id. (citation omitted). The State is not required to prove that defendant had the exclusive possession of a controlled substance. State v. Allen, 279 N.C. 406, 412, 183 S.E.2d 680, 684 (1971). "Proof of joint possession is sufficient." Id. (citation omitted).
We find ample evidence to establish defendant's constructive possession of the 1,096.14 grams of cocaine contained in the storage unit he leased at A-Plus Storage. At the time of his arrest, defendant was carrying in his wallet the gate access code and doorway combination for the storage unit. A key to the lock on the storage unit was on his set of keys. Defendant admitted visiting the facility to make the rent payments. Moreover, the cocaine in the storage unit was packaged in the same manner as the cocaine sold to Sanchez at El Cerro Grande, as well as the cocaine found in defendant's apartment. The storage unit also held boxes of pots and pans similar to a box found in defendant's storage unit at Safety Store. These circumstances suffice to show defendant's intent and ability to control the cocaine. See State v. Spencer, 281 N.C. 121, 129-30, 187 S.E.2d 779, 784 (1972) (finding sufficient evidence to show the defendant's constructive possession of marijuana found in a pig shed behind his house, where he was observed in the shed on several occasions and had marijuana seeds in his bedroom).

III.
Defendant next claims that the trial court erred by denying his request for the following special jury instruction:
I instruct you that the State has the burden of proving the identity of the defendant as the perpetrator of the crime charged beyond a reasonable doubt. This means that you, the jury, must be satisfied beyond a reasonable doubt that the defendant was the perpetrator of the crime charged before you may return a verdict of guilty.
N.C.P.I.Crim. 104.90 (2005). In support of his request, defendant averred that "he ha[d] not been identified by any witness as a person in possession of or knowingly transporting the cocaine with which he is charged." The trial court declined to give a special instruction on identification, concluding that the issue of defendant's identity as the possessor of the cocaine was "subsumed by the substantive instructions" setting forth the essential elements of each offense.
In instructing the jury on the offense of trafficking in cocaine by transportation, the court announced as follows:
For you to find the defendant guilty of this offense, the State must prove two things beyond a reasonable doubt: first, that the defendant knowingly transported cocaine from one place to another . . . and that the defendant knew that he was transporting cocaine . . . .
(Emphasis added.) Its instruction on trafficking by possession in the cocaine seized at the restaurant included similar language, to wit:
For you to find the defendant guilty of this offense the State must prove two things beyond a reasonable doubt: first, that the defendant at El Cerro Grande restaurant knowingly possessed 28 grams or more but less than 200 grams of cocaine and the defendant knew that what he possessed was cocaine[.]
(Emphasis added.) The court likewise instructed the jury that defendant could not be found guilty of conspiring to traffic in cocaine unless the State proved his membership in the conspiracy: [F]or you to find the defendant guilty of feloniously conspiring to commit cocaine trafficking by possession the State must prove three things beyond a reasonable doubt: first, that the defendant and Alex Pineda and others entered into an agreement . . . .
[A]nd further, that the defendant and Alex Pineda and others intended that the agreement be carried out at the time that it was made.
(Emphasis added.) Finally, the court's jury instruction on trafficking by possession of cocaine found in the storage unit included the following:
For you to find the defendant guilty of this offense the State must prove two things beyond a reasonable doubt: first, that the defendant . . . knowingly possessed more than 400 grams of cocaine and the defendant knew that what he possessed was cocaine . . . and second, that the amount of cocaine which the defendant possessed was more than 400 grams of cocaine.
(Emphasis added.)
"`[I]f a request is made for a jury instruction which is correct in itself and supported by evidence, the trial court must give the instruction at least in substance.'" State v. Duncan, 136 N.C. App. 515, 517, 524 S.E.2d 808, 810 (2000) (quoting State v. Harvell, 334 N.C. 356, 364, 432 S.E.2d 125, 129 (1993)). "So long as the requested instruction is given in substance, the trial court is not required to give it verbatim even when it is a correct statement of the law." State v. Penland, 343 N.C. 634, 656, 472 S.E.2d 734, 746 (1996), cert. denied, 519 U.S. 1098, 136 L. Ed. 2d 725, reh'g denied, 520 U.S. 1140, 137 L. Ed. 2d 366 (1997). The court's specific wording of its instructions is reviewed only for abuse of discretion. State v. Shepherd, 156 N.C. App. 603, 607, 577 S.E.2d 341, 344 (2003).
We find no error or abuse of discretion by the trial court. "In instructing on each of the offenses, the court indicated that the State was required to prove beyond a reasonable doubt that defendant committed their various elements. These instructions adequately informed the jury that the State had to prove that defendant was the perpetrator." Penland, 343 N.C. at 656, 472 S.E.2d at 746-47. We note that the jury was not presented with evidence of mistaken identity, such as a possible eyewitness misidentification, which might have justified a special instruction. Accordingly, we overrule this assignment of error.

IV.
As his final ground for appeal, defendant faults the trial court for admitting into evidence the yellow Nextel phone seized by Pennica. In his brief, defendant argues that the State did not disclose the existence of this evidence, pursuant to N.C. Gen. Stat. §§ 15A-903 and -907 (2007), and contends that the trial court improperly concluded that the State did not commit a discovery violation. We find that this argument is not properly before this Court.
Defendant claims to have "objected when the State sought to introduce the yellow Nextel phone marked State's Exhibit 22 that was purportedly in [his] possession at the time of his arrest." However, the transcript of the trial states the following:
[PROSECUTOR]: I want to show you what I've marked as State's Exhibit Number 22. Do you recognize that particular exhibit?
[OFFICER PENNICA]: Yes. This is the Nextel phone that we recovered from [defendant] . . . .
* * * *
[PROSECUTOR]: The State would move to admit State's Exhibit 22.
THE COURT: Any objection?
[DEFENSE COUNSEL]: No.
THE COURT: It's admitted.
Only when the prosecutor questioned Pennica about the phone numbers stored in the phone's memory did defendant raise an objection, asserting, "There's no evidence with respect to that, Your Honor. We've received no discovery on this."
By failing to object to the telephone's admission into evidence, defendant waived appellate review of this issue. See N.C. R. App. P. 10(b)(1). Moreover, as the State observes, defendant's briefed argument that the trial court improperly concluded that the State did not commit a discovery violation is not supported by the corresponding assignment of error in the record on appeal. See N.C. R. App. P. 10(a), 28(b)(6). N.C. Gen. Stat. § 15A-903(a) provides only that defendant be provided access to the phone and an opportunity to inspect, examine, and test it. N.C. Gen. Stat. § 15A-903(a)(1).
The record on appeal includes additional assignments of error not addressed by defendant in his brief to this Court. By rule, we deem them abandoned. N.C. R. App. P. 28(b)(6).
No error.
Judges McGEE and STROUD concur.
Report per Rule 30(e).