STATE OF NORTH CAROLINA v. ANTHONY JOHN BENARDELLO, Defendant

No. COA03-1011

(Filed 1 June 2004)

**1. Conspiracy— one side of telephone conversation—insufficient evidence**

There was insufficient evidence of a conspiracy to shoot into occupied property and to commit first-degree murder where one side of a telephone conversation involved a possible agreement to

resolve a money problem but did not mention shooting, killing, or violence. There was nothing to support an inference that the other person on the telephone even knew about defendant's plan to use violence.

**2. Evidence— other offenses and acts—no plain error**

Given the strength of the other evidence, there was no plain error in a prosecution for soliciting shooting into occupied property in the admission of testimony about defendant's threats to kill a third party and to engage in a swap of drugs for stolen goods.

**3. Evidence— other offenses and acts—no plain error**

There was no plain error in a prosecution for soliciting shooting into occupied property in admitting without a limiting instruction testimony about defendant's intent to have someone shot. Any error was not so prejudicial that it resulted in a miscarriage of justice.

Appeal by defendant from judgments entered 26 March 2003 by Judge Mark E. Klass in the Superior Court in Cabarrus County. Heard in the Court of Appeals 29 April 2004.

*Attorney General Roy Cooper, by Assistant Attorney General E. Clementine Peterson, for the State.*

*Leslie C. Rawls, for defendant-appellant.*

HUDSON, Judge.

At the 17 March 2003 session of criminal superior court, a jury convicted defendant Anthony John Benardello of one count of Conspiracy to Commit First-Degree Murder, two counts of Conspiracy to Commit Shooting into Occupied Property, and two counts of Solicitation to Commit Shooting into Occupied Property. The jury acquitted defendant of a second charge of Conspiracy to Commit Murder. The court imposed a consolidated sentence of twelve to fifteen months for the two solicitation charges, a consolidated sentence of nineteen to twenty-three months for the two conspiracy to shoot into occupied property charges, and a concurrent sentence of 151 to 191 months for conspiracy to commit first degree murder. Defendant appeals. We reverse his conspiracy convictions and affirm his solicitation convictions.

The evidence tended to show that defendant had loaned fifty dollars to Wesley Russell ("Russell") in early 2002. At the time, Russell lived with his mother, Peggy Russell. Russell was subsequently unable to repay the loan, and defendant declared he would begin charging fifty dollars per day in interest, eventually demanding a total repayment of $1600. Defendant then demanded that Russell sell Oxycontin pills to repay the debt. Russell took the pills to the home of his aunt, Louann Linker ("Linker"), who forbade Russell to sell the drugs. Linker then called defendant and told him to come and pick up the pills. Defendant later made threatening statements to both Linker and Russell's mother.

Defendant next told Shawn Llewellyn, an associate, that he wanted to have someone "shoot up" the Russell and Linker houses and to "whack" Russell. Llewellyn notified the Cabarrus County Sheriff's Department and helped Detective Derek Waller set up a meeting with defendant during which Detective Waller would pose as a hit man. Detective Waller wore a hidden wire that recorded audio and video of the entire meeting, which occurred in a restaurant. Defendant told the detective and Llewellyn about his money problems and anger at Linker and the Russells, and about his various criminal endeavors and experiences. Then defendant received a brief cell phone call. Defendant's side of the conversation was recorded and follows, in its entirety:

> Yes sir. Uhh, I am working on your money problem right now. I have somebody who is going to take care of it and there is no need to plan anything. Okay, sir. When I get the money I'll pass it up. No problem sir. No sir. I'll check with you tomorrow, alright sir? Alright. [hangs up]

> The boss. We all answer to somebody.

[1] The State contends that this evidence revealed three separate agreements with the unknown third party who called defendant's cell phone to murder Russell and to shoot into the Linker and Russell homes. Defendant argues that this single, brief one-sided phone conversation is insufficient to support even a single conspiracy conviction, and that the evidence instead reveals only solicitation. We agree.

This Court has previously addressed the difference between solicitation and conspiracy:

> Solicitation is complete when the request to commit a crime is made, regardless of whether the crime solicited is ever commit-

ted or attempted. Conspiracy, on the other hand, is the agreement of two or more persons to do an unlawful act or to do a lawful act by an unlawful means. The reaching of an agreement is an essential element of conspiracy. It is certainly possible to solicit another to commit a crime without the agreement essential to a conspiracy ever being reached.

*State v. Richardson*, 100 N.C. App. 240, 247, 395 S.E.2d 143, 148, *appeal dismissed and rev. denied* 327 N.C. 641, 399 S.E.2d 332 (1990) (internal citations omitted). Here, the only evidence pointing to a possible conspiracy is the above-quoted portion of a cell phone call, which supports inferences about a possible agreement to resolve a money problem. There is no mention of shooting, killing or violence of any kind, and thus nothing to support an inference that the unknown person on the phone even knew about defendant's plan to use violence, much less that he or she agreed to it.

While conspiracy can be proved by inferences and circumstantial evidence, it "cannot be established by a mere suspicion, nor does a mere relationship between the parties or association show a conspiracy." *State v. Massey*, 76 N.C. App. 660, 662, 334 S.E.2d 71, 72 (1985). Instead "[i]f the conspiracy is to be proved by inferences drawn from the evidence, such evidence must point unerringly to the existence of a conspiracy." *Id.* The evidence here does not point unerringly toward conspiracies to commit murder or to shoot into occupied properties and is insufficient to support convictions on those charges.

**[2]** Defendant next argues that it was plain error for the court to admit testimony about defendant's alleged threats to kill a third party and to engage in a swap of drugs for stolen goods with Detective Waller. We disagree.

"Plain error includes error that is a fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done; or grave error that amounts to a denial of a fundamental right of the accused; or error that has resulted in a miscarriage of justice or in the denial to appellant of a fair trial." *State v. Gregory*, 342 N.C. 580, 586, 467 S.E.2d 28, 32 (1996). A defendant must show "that absent this error, the jury would have probably reached a different result." *State v. Morganherring*, 350 N.C. 701, 722, 517 S.E.2d 622, 634 (1999), *cert. denied*, 529 U.S. 1024, 146 L. Ed. 2d 322, 120 S. Ct. 1432 (2000). Given the strength of the other evidence that defendant solicited the shooting into an occupied property,

we are not persuaded that admission of this evidence was a fundamental error without which the jury would have reached a different result.

[3] Defendant also argues that it was plain error to admit without a limiting instruction Shawn Llewellyn's comments to Detective Waller about defendant's supposed intention to have someone shot. The testimony from Detective Waller was offered to provide background to the restaurant meeting between defendant, Llewellyn, and the detective. Under the plain error standard discussed in detail above, we conclude that this admission, if error, was not so prejudicial that it resulted in a miscarriage of justice or in the denial of a fair trial to appellant.

## Conclusion

For the foregoing reasons, we reverse defendant's three conspiracy convictions and affirm his conviction for solicitation.

Reversed in part and affirmed in part.

Judges McCULLOUGH and LEVINSON concur.