NO. COA13-694

NORTH CAROLINA COURT OF APPEALS

Filed: 15 April 2014

STATE OF NORTH CAROLINA

    v.

ERADIO VELAZQUEZ-PEREZ
and
EDGAR AMPELIO-VILLALVAZO

Buncombe County
Nos. 11 CRS 6952-55
      11 CRS 60583-86

Appeal by Defendants from order entered 16 October 2012 and judgments entered 13 November 2012 by Judge Marvin P. Pope in Superior Court, Buncombe County. Heard in the Court of Appeals 7 January 2014.

> *Attorney General Roy Cooper, by Special Deputy Attorney General Phillip K. Woods and Assistant Attorney General Stuart M. (Jeb) Saunders, for the State.*
>
> *Anne Bleyman for Defendant-Appellant Eradio Velazquez-Perez.*
>
> *Goodman Carr, PLLC, by W. Rob Heroy, for Defendant-Appellant Edgar Ampelio-Villalvazo.*

McGEE, Judge.

Henderson County Sheriff's Deputy David McMurray ("Deputy McMurray") was working with a special unit that involved both Henderson and Buncombe Counties along Interstate 40 on 4

September 2011. That day he was working in Buncombe County. Defendant Edgar Ampelio-Villalvazo ("Villalvazo") was driving a tractor-trailer ("the truck") on 4 September 2011 that was owned by Defendant Eradio Velazquez-Perez ("Perez") (together, "Defendants"). Perez was also in the truck at the time. Deputy McMurray was sitting in an unmarked SUV ("the SUV") parked at a commercial vehicle weigh station, facing the exit ramp, when he observed the truck exiting Interstate 40 headed into the weigh station. Deputy McMurray, who had been trained in visual estimation of speed, testified that he estimated the truck to be travelling at approximately fifty miles per hour where the posted recommended speed was thirty miles per hour.

After the truck had exited the scales, Deputy McMurray stopped the truck at the weigh station. Deputy McMurray positioned his SUV facing the truck and activated the SUV's dashboard camera. The camera simultaneously recorded video of the truck and the interior of Deputy McMurray's SUV. The camera also recorded audio inside the SUV, and had the capability to record audio from a receiver that Deputy McMurray could wear on his person, but Deputy McMurray either forgot to wear the receiver or failed to activate it. Deputy McMurray approached the cab of the truck, spoke with Defendants, and returned to his SUV with some documentation. Villalvazo then exited the truck

and walked back to the SUV with additional documentation. Villalvazo sat in the passenger seat of the SUV for approximately forty-nine minutes, while Deputy McMurray wrote a warning citation and conducted certain records checks related to the stop, including checking the driver's licenses of Villalvazo and Perez, the truck registration, insurance information, log books, and other documentation related to the load then being transported on the truck.

During the stop, Deputy McMurray asked Villalvazo a number of questions, and on several occasions left the SUV, returning to the truck to ask Perez additional questions. Deputy McMurray completed the warning citation and handed it to Villalvazo approximately twelve minutes into the stop and informed Villalvazo that the documentation check was ongoing, and so Villalvazo remained in the SUV.

During this process, Deputy McMurray became suspicious that criminal activity, such as drug trafficking, might be occurring. Deputy McMurray's suspicions were based on a number of observations, including concerns he had about the log books, what he perceived as nervous behavior on the part of Villalvazo, and certain discrepancies between answers given by Villalvazo and Perez. Both Villalvazo and Perez told Deputy McMurray that Villalvazo had not been working for Perez for very long.

Villalvazo told Deputy McMurray that he had not known Perez before he began working for him, and that this was Villalvazo's first out-of-state trip since he began working for Perez. The log books were consistent with this statement.

Once Deputy McMurray completed checking the documents, he returned the documents to Villalvazo and Perez, and asked them both if they would consent to a search of the truck. Both agreed and signed voluntary consent forms authorizing a search of the truck. Deputy McMurray used a hammer to tap on various areas of the interior of the cab, and located several places that he believed might contain hidden compartments. Deputy McMurray used a knife to cut through or remove upholstery, and to remove sheet metal beneath the upholstery. In so doing, Deputy McMurray uncovered several hidden compartments, two of which contained a combined twenty-four kilograms of cocaine. Only one fingerprint was recovered from inside the hidden compartments, and it matched neither Villalvazo nor Perez. A duffel bag containing Perez's clothes and personal items was also located inside the cab of the truck and $5,000.00 in cash was recovered from inside the lining of that duffel bag. Several mobile phones belonging to Perez were also recovered. Villalvazo had one mobile phone with him, and only a small amount of cash.

Villalvazo and Perez were arrested and tried together. Each was found guilty of two counts of trafficking cocaine in excess of 400 grams (based upon possession and transportation), one count of possession with intent to sell or deliver cocaine, and one count of conspiracy to traffic in cocaine by transporting and possessing cocaine in excess of 400 grams. Both Defendants appealed, and we address both of their appeals in this opinion.

I.

In Villalvazo's first argument, he contends the trial court erred in denying his motions to dismiss the two counts of trafficking cocaine (based upon possession and transportation), and the one count of possession with intent to sell or deliver cocaine, because the State failed to produce substantial evidence of each essential element of those charges. We agree.

> A motion to dismiss is properly denied if "there is substantial evidence (1) of each essential element of the offense charged and (2) that defendant is the perpetrator of the offense." "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." "When ruling on a motion to dismiss, all of the evidence should be considered in the light most favorable to the State, and the State is entitled to all reasonable inferences which may be drawn from the evidence." If substantial evidence exists, whether direct, circumstantial, or both, supporting a finding that the offense charged was committed by the defendant, the

case must be left for the jury.
*State v. Tisdale*, 153 N.C. App. 294, 296-97, 569 S.E.2d 680, 682 (2002) (citations omitted). "Trafficking in cocaine by possession and trafficking in cocaine by transportation, in violation of N.C. Gen. Stat. § 90-95(h)(3) (2001), require the State to prove that the substance was knowingly possessed and transported." *State v. Baldwin*, 161 N.C. App. 382, 391, 588 S.E.2d 497, 504 (2003) (citation omitted).

> "[I]n a prosecution for possession of contraband materials, the prosecution is not required to prove actual physical possession of the materials." Proof of nonexclusive, constructive possession is sufficient. Constructive possession exists when the defendant, "while not having actual possession, . . . has the intent and capability to maintain control and dominion over" the narcotics. "Where such materials are found on the premises under the control of an accused, this fact, in and of itself, gives rise to an inference of knowledge and possession which may be sufficient to carry the case to the jury on a charge of unlawful possession." "However, unless the person has exclusive possession of the place where the narcotics are found, the State must show other incriminating circumstances before constructive possession may be inferred."

*Tisdale*, 153 N.C. App. at 297, 569 S.E.2d at 682 (citations omitted). Knowledge of the existence of the contraband was necessary to prove the trafficking and possession charges. *State v. Wiggins*, 185 N.C. App. 376, 386, 648 S.E.2d 865, 872 (2007).

The State argues that the facts in this case regarding Villalvazo's knowledge of the cocaine are analogous to those in *Tisdale* and *State v. Munoz*, 141 N.C. App. 675, 541 S.E.2d 218 (2001). We disagree. In *Tisdale*, this Court found sufficient additional incriminating circumstances where the defendant was driving alone in an automobile that had been rented by another person, Harold Leak ("Leak"). *Tisdale*, 153 N.C. App. at 295, 569 S.E.2d at 681.

> Just before defendant was pulled over, he had accelerated from 0 to 60 miles per hour in a 35 mile per hour speed zone with a police officer directly behind him. The officer noticed the cocaine in *plain view* in the car door handle on the driver's side of the vehicle, well within reach of defendant. While talking with the officer, defendant was "sweating profusely" and was nervous. In the officer's opinion, defendant "was under the influence of something[,]" although the officer did not consider defendant to be so impaired that he could not drive. A subsequent search of the vehicle uncovered more cocaine located under the driver's seat. This second baggie of cocaine was also well within defendant's reach. Although Cosby [a carwash employee], [and] an admitted cocaine addict, testified he placed or dropped cocaine in the car while cleaning it, Leak testified he did not notice any cocaine in the vehicle following the cleaning. Taken in the light most favorable to the State, this evidence supports a reasonable inference that defendant was aware of the presence of cocaine in the vehicle and had the power and intent to control its disposition.

*Tisdale*, 153 N.C. App. at 298-99, 569 S.E.2d at 683.

In *Munoz*, regarding the defendant's knowledge of cocaine recovered from a vehicle the defendant had been driving, this Court held that "it could be inferred [from the attendant circumstances] that defendant had knowledge of the presence of [] cocaine." *Munoz*, 141 N.C. App. at 686, 541 S.E.2d at 224.

> An inference that defendant had knowledge of the presence of the cocaine can be drawn from defendant's power to control the Sentra. The Sentra had been under defendant's exclusive control since it was loaded onto the car carrier in Houston, Texas six days prior to defendant's arrest, and Trooper Gray testified that he had to obtain keys from defendant to unlock the cars to be able to search them. In addition, the State presented other evidence from which an inference of defendant's knowledge could be drawn. First, defendant presented the troopers with bills of lading for the Aerostar and the other vehicles which he had transported, but had no such document for the Sentra. Each bill of lading contained an inspection checklist. Defendant explained that he had no such inspection checklist for the Sentra because it was raining when he picked up the car in Houston, Texas; however, a certified copy of a report by the National Climatic Data Center was introduced into evidence showing that there was no precipitation in the Houston area on that date. Trooper Gray's testimony regarding the lack of rear tags, the absence of a trunk lock, the grease-like odor and the displacement of the rear seat indicates that defendant could have found the cocaine had he inspected the Sentra in a manner consistent with the inspection he conducted on the Aerostar. Second, the FAX indicated that the Sentra was to be shipped to Junior City, New Jersey and provided a contact number with an area code of 917.

> Agents from the State Bureau of Investigation testified that Junior City, New Jersey does not exist and that 917 is a New York City area code. Finally, defendant told the agents that he did not know Mr. Angel and that Mr. Angel would not be able to contact defendant directly; however, a call was received on defendant's pager from the number identified as Mr. Angel's on the FAX. Taking the facts in the light most favorable to the State and leaving discrepancies and inconsistencies in the testimony for the jury to resolve, we conclude there was sufficient evidence from which it could be inferred that defendant had knowledge of the presence of the cocaine.

*Id.* at 685-86, 541 S.E.2d at 224.

We note that not only was Villalvazo's control over the truck not exclusive, the owner of the truck was Perez, the co-driver. The cocaine was secreted in hidden compartments that were not accessible to Villalvazo. Because the truck belonged to Perez, Perez was the one with the authority to cut open the truck, hide the cocaine, and seal the compartments with sheet metal and upholstery. The State argues there were other incriminating circumstances sufficient to submit to the jury the charges of trafficking and possession against Villalvazo. Specifically, the State cites Deputy McMurray's "review of the logbooks and other documentation [that] caused him to question the economic feasibility of the trip, which supported his overall suspicion of illegal narcotics activity." If, in fact,

Perez's trucking company was operating in an economically unsound manner, that would be evidence the jury could consider in its deliberations concerning Perez. Evidence suggested Villalvazo had not been working very long for Perez, there was no evidence that Villalvazo had any stake or control in Perez's trucking company, or any authority to countermand Perez's authority. Deputy McMurray's suspicions concerning the logbooks and other documentation are not particularly relevant to Villalvazo in this matter.

The State contends that "as the driver of the vehicle, [Villalvazo] had the power to control the contents of the vehicle." No evidence was presented that Villalvazo had the power to control the cocaine hidden inside secret compartments that Deputy McMurray had to cut through upholstery and sheet metal to discover. The State also argues: "[Villalvazo] did not testify, and indeed presented no evidence as to his lack of access." It is improper for the State to base arguments at trial on a defendant's decision not to testify, and it is at least inappropriate to do so on appeal. The State contends Villalvazo "was in essence the borrower of the vehicle" which, based upon *State v. Glaze*, 24 N.C. App. 60, 210 S.E.2d 124 (1974), allowed

> an inference of knowledge and possession
> which may be sufficient to carry the case to

> the jury. The inference is rebuttable, and if the owner of a vehicle loans it to an accused without telling him what is contained within the vehicle, the accused may offer evidence to that effect and thereby rebut the inference.

*Id*. at 64, 210 S.E.2d at 127. We disagree with the State that a hired employee of a trucking company, who has been instructed to drive by his employer, is "in essence the borrower of the vehicle[.]" We find this analogy especially tenuous when the employer and owner of the vehicle was in the vehicle and would have been driving the vehicle had it been stopped at another time during the trip.

The State also refers to Deputy McMurray's "many suspicions" concerning Villalvazo. These suspicions included Villalvazo clearing his throat and "kind of coughing" several times during the approximately fifty minutes Villalvazo was sitting in Deputy McMurray's SUV, Deputy McMurray's testimony that Villalvazo sometimes avoided eye contact, and that Villalvazo's "heart" was beating in his neck. In its order denying Defendants' motions to suppress, the trial court found as fact: "The Court observed the demeanor of [Villalvazo] in the video to be somewhat apprehensive and nervous during the investigation by Officer McMurray[.]" We agree with the trial court that Villalvazo's demeanor could be characterized as "somewhat apprehensive and nervous during the investigation[.]"

The State contends that Villalvazo "presented no evidence as to his lack of access [to the hidden compartments]." However, on cross-examination of the State's witnesses, the defense attorneys elicited testimony that none of Villalvazo's fingerprints were recovered from inside the compartments or from the packaged cocaine, that cutting and removing upholstery and sheet metal to uncover the compartments was labor intensive, and that the compartments would not have been visible "to the average-civilian naked eye." When Deputy McMurray was asked how Villalvazo reacted to hearing there had been cocaine recovered from the truck, Deputy McMurray testified that Villalvazo was "surprised," and that Villalvazo responded: "Cocaine? Cocaine in the truck?"

The State's evidence in support of the required element that Villalvazo had knowledge of the cocaine hidden within the structure of the truck was that Villalvazo was in the truck, was driving the truck at the time of the stop, and that Deputy McMurray believed Villalvazo showed some signs of nervousness during the stop. The State presented no evidence that Perez actually communicated with Villalvazo in any manner concerning hidden compartments or any cocaine within the hidden compartments. The evidence presented — that Villalvazo knew Perez only because Perez had hired Villalvazo as a driver and

they had only known each other only for a short period of time — does not establish a relationship between the two as indicative of the trust one would expect when admitting to a serious felony. We can think of no good reason why Perez would want, or need, to share that information with one in Villalvazo's position. The level of nervousness demonstrated by Villalvazo in this instance is also of limited value to the State's case. As our Supreme Court has stated: "[M]any people do become nervous when stopped by [a law enforcement officer]." *State v. McClendon*, 350 N.C. 630, 638, 517 S.E.2d 128, 134 (1999). Some degree of nervousness is common when a person is stopped and detained by law enforcement, even for minor traffic violations.

We hold that the evidence presented to support the required element that Villalvazo knew there was cocaine secreted within the body of the truck was not substantial, in that it did not constitute "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Tisdale*, 153 N.C. App. at 296, 569 S.E.2d at 682 (citation omitted). We make this holding even considering "all of the evidence . . . in the light most favorable to the State[.]" *Id*. at 296-97, 569 S.E.2d at 682 (citation omitted). We vacate Villalvazo's convictions for trafficking in cocaine by transportation, trafficking in cocaine

by possession, and possession of cocaine with intent to sell or deliver.

## II.

Both Villalvazo and Perez argue the State failed to present substantial evidence in support of the charges of "conspir[acy] to traffic in cocaine . . . by transporting and possessing [cocaine] in excess of 400 grams[.]" We agree.

> A criminal conspiracy is an agreement between two or more people to do an unlawful act or to do a lawful act in an unlawful manner. In order to prove conspiracy, the State need not prove an express agreement; evidence tending to show a mutual, implied understanding will suffice. Nor is it necessary that the unlawful act be completed. "As soon as the union of wills for the unlawful purpose is perfected, the offense of conspiracy is completed."

*State v. Morgan*, 329 N.C. 654, 658, 406 S.E.2d 833, 835 (1991) (citations omitted).

> While conspiracy can be proved by inferences and circumstantial evidence, it "cannot be established by a mere suspicion, nor does a mere relationship between the parties or association show a conspiracy." Instead "[i]f the conspiracy is to be proved by inferences drawn from the evidence, such evidence must point unerringly to the existence of a conspiracy."

*State v. Benardello*, 164 N.C. App. 708, 711, 596 S.E.2d 358, 360 (2004) (citations omitted). Though not dispositive, the fact we held above that there was not substantial evidence indicating

Villalvazo knew there was cocaine secreted in the truck factors into our analysis. The State submitted no evidence directly implicating Villalvazo and Perez in a conspiracy. The only evidence presented was that Villalvazo worked for Perez, and that they were both involved in driving the truck while it contained the cocaine. In the present case, "[t]he evidence . . . does not point unerringly toward conspiracies [to traffic in cocaine by transporting and possessing cocaine in excess of 400 grams] and is insufficient to support convictions on those charges." *Id*. We hold there was not substantial evidence of a conspiracy presented at trial, and we vacate Villalvazo's and Perez's convictions for conspiracy to traffic in cocaine by transporting and possessing.

## III.

Because our holdings above result in vacating all four convictions against Villalvazo, we do not address Villalvazo's remaining arguments.

## IV.

In Perez's second argument, he contends the trial court erred in denying his motion to suppress the cocaine seized based upon his argument that the stop was unconstitutionally extended. We disagree.

Perez contends:

> Once Deputy McMurray issued the warning citation to . . . Villalvazo for speeding, the justification for the initial stop was completed. Deputy McMurray then told . . . Villalvazo he was going to run more checks. Deputy McMurray had not obtained any evidence up to that point that would justify prolonging the detention beyond the time it took to investigate the initial traffic stop.

Perez's argument is limited to contending that, once Deputy McMurray handed Villalvazo the warning citation, the purpose of the stop was over, and anything that occurred after that time constituted an unconstitutional prolongation of the stop. However, Perez provides no citation to authorities upon which he relies in support of the proposition that the purpose of the stop was necessarily completed once the citation for the infraction justifying the stop had been given to the person who committed the infraction. Failure to cite to supporting authority is a violation of Rule 28(b)(6) of the North Carolina Rules of Appellate Procedure, and constitutes abandonment of this argument. N.C.R. App. P. 28(b)(6).

In addition, we find no such authority. Law enforcement officers routinely check relevant documentation while conducting traffic stops. This Court has recognized that

> an initial traffic stop concludes and the encounter becomes consensual only after an officer returns the detainee's driver's license and registration. *See State v. Kincaid*, 147 N.C. App. 94, 100, 555 S.E.2d

294, 299 (2001) (holding that because a reasonable person would have felt free to leave when his documents were returned, the initial seizure concluded when the officer returned the documents to defendant)[.]

*State v. Jackson*, 199 N.C. App. 236, 243, 681 S.E.2d 492, 497 (2009).

In the present case, though Deputy McMurray had completed writing the warning citation, he had not completed his checks related to the licenses, registration, insurance, travel logs, and invoices of Perez's commercial vehicle. Perez does not argue that investigation into any of these documents was improper. The purpose of the stop was not completed until Deputy McMurray finished a proper document check and returned the documents to Villalvazo and Perez. Because Perez does not argue this issue, we do not make any holding regarding which documents may be properly investigated during a routine commercial vehicle stop.

The trial court found as fact that: "The actual time for this traffic stop of [] Defendants was approximately 53 minutes[;]" that Deputy McMurray asked both Villalvazo and Perez for consent to search the truck, and consent was given by both; that both Villalvazo and Perez signed consent to search forms; and that "[d]uring the course of the consent search," the hidden compartments were located, and the cocaine was recovered from

two of those compartments. Perez does not challenge these findings of fact, and they are therefore binding on appeal. *State v. McLeod*, 197 N.C. App. 707, 711, 682 S.E.2d 396, 398 (2009).

The trial court concluded that Villalvazo and Perez "voluntarily consented and agreed to additional questioning once the purpose of the traffic stop was completed." Because these unchallenged findings of fact support the trial court's conclusion that Villalvazo and Perez voluntarily consented to the search of the truck after the approximately fifty-three minute stop concluded, we have nothing further to review.

> "An appellate court accords great deference
> to the trial court's ruling on a motion to
> suppress because the trial court is
> entrusted with the duty to hear testimony
> (thereby observing the demeanor of the
> witnesses) and to weigh and resolve any
> conflicts in the evidence." "'Our review of
> a trial court's denial of a motion to
> suppress is strictly limited to a
> determination of whether it's [sic] findings
> are supported by competent evidence, and in
> turn, whether the findings support the trial
> court's ultimate conclusion.'"

*State v. Hernandez*, 170 N.C. App. 299, 303-04, 612 S.E.2d 420, 423 (2005) (citations omitted). The fact that the trial court also included findings of fact and conclusions of law relating to Defendants' reasonable suspicion argument at the hearing is of no moment. The 16 October 2012 order contains unchallenged

findings of fact supporting the trial court's conclusion that the search was a legal search based on the voluntary consent of both Villalvazo and Perez. This argument is without merit.

V.

In Perez's third argument, he contends his trial counsel was ineffective due to his "failure to renew the objection to the admission of evidence that was fruits of the improper extension of the traffic stop." Having held that Perez's argument in Section IV. fails, this argument also fails.

VI.

In Perez's fourth argument, he contends the trial court erred "in ordering costs for fingerprint examination as lab fees as part of [Perez's] sentence in violation of a statutory mandate." We agree.

N.C. Gen. Stat. § 7A-304 (2013) covers costs in criminal prosecutions, and allows certain lab costs to be assessed to a defendant who is convicted.

> For the services of any crime laboratory facility operated by a local government or group of local governments, the district or superior court judge shall, upon conviction, order payment of the sum of six hundred dollars ($600.00) to be remitted to the general fund of the local governmental unit that operates the laboratory to be used for law enforcement purposes. The cost shall be assessed only in cases in which, as part of the investigation leading to the defendant's conviction, the laboratory has performed DNA

> analysis of the crime, test of bodily fluids of the defendant for the presence of alcohol or controlled substances, or analysis of any controlled substance possessed by the defendant or the defendant's agent.

N.C. Gen. Stat. § 7A-304(a)(8) (2013).

The State agrees with Perez that N.C.G.S. § 7A-304(a)(8) does not allow recovery of lab costs for fingerprint analysis, "and therefore the State does not object to [Perez's] request that $600 be vacated from the $1,200 costs ordered by the trial court." The trial court erred in assessing $600.00 for fingerprint analysis done by the Charlotte-Mecklenburg Police Department. We reverse and remand for correction of this error.

## VII.

In conclusion, we vacate all four of Villalvazo's convictions. We vacate Perez's conviction for conspiracy to traffic in cocaine. We find no error related to Perez's remaining convictions. We reverse and remand for the trial court to delete the $600.00 it assessed as costs for fingerprint examination as lab fees as part of Perez's sentence, and enter a corrected judgment.

Vacated in part, no error in part, reversed and remanded in part.

Judges HUNTER, Robert C. and ELMORE concur.