NO. COA13-1092

NORTH CAROLINA COURT OF APPEALS

Filed: 16 September 2014

STATE OF NORTH CAROLINA

v.                                    Jackson County
                                      Nos. 11 CRS 51412, 51413
BILLY RAY DAVIS


        Appeal by defendant from judgments entered 30 May 2013 by
Judge J. Thomas Davis in Jackson County Superior Court.  Heard
in the Court of Appeals 23 April 2014.

        *Attorney General Roy Cooper, by Special Deputy Attorney
        General June S. Ferrell, for the State.*

        *David L. Neal for defendant.*


        McCULLOUGH, Judge.

        Billy Ray Davis ("defendant") appeals from judgments
entered upon his convictions for trafficking in methamphetamine
by possession, trafficking in methamphetamine by manufacture,
conspiring to traffic in methamphetamine, manufacturing
methamphetamine, possession of an immediate precursor chemical
to methamphetamine, and possession of drug paraphernalia.  For
the following reasons, we find no error.

                        I. Background

On 14 December 2011, a Jackson County grand jury indicted defendant on charges of trafficking in methamphetamine by possession, trafficking in methamphetamine by manufacture, conspiring to traffic in methamphetamine by manufacture, manufacturing methamphetamine, possession of an immediate precursor chemical to methamphetamine, and possession of drug paraphernalia. Defendant's case then came on for jury trial in Jackson County Superior Court on 28 May 2013, the Honorable J. Thomas Davis, Judge presiding.

The evidence offered during the presentation of the State's case tended to show the following: On 29 July 2011, Jim Henry, a senior K-9 deputy sheriff with the Jackson County Sheriff's Office, responded to an alert of possible drug activity by subjects in a small gray Dodge pickup with a white camper cover in the Greens Creek area off the south side of Highway 441. Dep. Henry located the vehicle upon arrival to the area, observed that no one was around, and proceeded down a trail at the rear of the vehicle leading into the woods along the creek. Dep. Henry recalled that the vegetation on the trail was crushed down as if someone had recently walked over it.

Approximately 20 to 30 yards down the trail, Dep. Henry heard two individuals talking and crawled to a position where he

could see what was going on. From his position on the bank, Dep. Henry observed a male and a female, later identified as defendant and Keisha Maki, on a grassy area in the middle of the creek near a blanket that was covered with bags and other various items. From his position on the bank, Dep. Henry observed Maki use tongs to lower a bottle into the creek. At that time, defendant instructed Maki to "[p]ut the glasses over [her] eyes, [because she didn't] want that stuff in [her] eyes." Maki then removed the bottle from the creek and the bottle began smoking.

After observing defendant and Maki for approximately ten minutes, Dep. Henry retreated up the trail to call his superior officer and Lee Tritt, a Special Agent with the State Bureau of Investigation. Special Agent Tritt arrived shortly thereafter and met Dep. Henry on the trial. He and Dep. Henry then proceeded back down the trail to the area overlooking the creek to observe what was going on.

Dep. Henry and Special Agent Tritt observed defendant and Maki for approximately thirty minutes before Maki noticed them and alerted defendant. During this time, defendant and Maki were moving back and forth around the site where the blanket was laid out. Dep. Henry recalled that they were moving bottles

back and forth. Special Agent Tritt testified that he became curious about a bottle sitting near the edge of the creek because it was obvious that it did not have a liquid like Coke or Sprite in it, but rather some type of solid substance.

Approximately thirty minutes after Special Agent Tritt arrived, Maki entered the creek and noticed they were being watched. At that point, Maki motioned for defendant to come over to her and alerted him of Dep. Henry and Special Agent Tritt's presence. Dep. Henry and Special Agent Tritt then came down the bank toward defendant and Maki and identified themselves as law enforcement. At that instant, Maki, who had backed out of the creek with defendant, hurriedly moved the bottle sitting at the edge of the creek into the creek near a concrete bridge support. The bottle immediately began to react with the water and started to smoke.

Special Agent Tritt was aware that the smoke from methamphetamine production was corrosive and dangerous and removed Maki from the smoky area while Dep. Henry apprehended defendant. Both defendant and Maki were taken into custody. Dep. Henry recalled that as he took defendant into custody, defendant stated several times that "[i]t wasn't me, I was at

Food Lion, I wasn't making dope[,]" indicating he was aware what was going on.

After defendant and Maki were in custody, law enforcement secured the area. Among the items recovered were the following: a handbag that was found to contain a syringe and a white substance wrapped in a coffee filter, a duffle bag in which a clear two liter bottle containing white and pink granular material, gray metal pieces, and a clear liquid was found, empty boxes and blister packs of pseudoephedrine, a blister pack still containing pseudoephedrine, an empty pack of AA Energizer lithium batteries, a AA Energizer lithium battery that someone had cut the top off of and removed the lithium, iodized salt, sodium hydroxide, drain opener, funnels, tubing, coffee filters, syringes, and various items of clothing. The plastic bottle Maki placed into the creek was also recovered. There was white and pink granular material in the burned bottle.

Testing of the white substance found wrapped in the coffee filter inside the handbag revealed the substance to be .8 grams of methamphetamine. Testing of the clear liquid removed from the bottle found inside the duffle bag revealed the liquid, weighing 73.6 grams, contained methamphetamine.

At trial, officers testified about the methamphetamine production process and explained that the remnants of packaging of four out of five ingredients – drain cleaner, sodium hydroxide, lithium batteries, and pseudoephedrine - used to manufacture methamphetamine using the "shake and bake" or "one pot" method were recovered at the scene, as well as many of the items used to manufacture methamphetamine. Testimony also explained that lithium metal is water reactive and can ignite when it is exposed to moisture. From the totality of everything found, Special Agent Michael Piwowar, a forensic scientist with the North Carolina State Crime Lab, "confirmed that it was a methamphetamine one pot reaction going on."

At the close of the State's evidence, defendant moved to dismiss all charges. Defendant focused his argument in support of dismissal on the trafficking charges, arguing the entire weight of the liquid recovered could not be considered because it was at an intermediate stage in the methamphetamine production process. After clarifying that the pseudoephedrine had already been converted to methamphetamine in the mixture and it was just a matter of extracting the methamphetamine from the liquid, the trial court denied defendant's motion to dismiss the charges.

Defendant did not call any witnesses in his defense, but submitted three exhibits that were admitted without objection. Defendant then renewed his motion to dismiss all charges, which the trial court denied.

On 30 May 2013, the jury returned verdicts finding defendant guilty on all charges. The trial court consolidated defendant's convictions between two judgments and sentenced defendant to consecutive terms totaling 153 months to 193 months imprisonment. Defendant was further ordered to pay costs, fees, restitution, and a $50,000 fine. Defendant gave notice of appeal in open court.

## II. Discussion

### Motion to Dismiss

In the first issue raised on appeal, defendant contends the trial court erred in denying his motion to dismiss the charges for insufficiency of the evidence made at the close of the State's evidence and renewed at the close of all the evidence. Specifically, defendant contends that absent an acting in concert instruction the State failed to offer sufficient evidence that he manufactured or possessed methamphetamine. Defendant also contends the State failed to offer sufficient evidence of a conspiracy.

"This Court reviews the trial court's denial of a motion to dismiss *de novo*." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). "'Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.'" *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (quoting *State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993)), *cert. denied*, 531 U.S. 890, 148 L. Ed. 2d 150 (2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980).

"In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994), *cert. denied*, 515 U.S. 1135, 132 L. Ed. 2d 818 (1995).

> Circumstantial evidence may withstand a
> motion to dismiss and support a conviction

> even when the evidence does not rule out every hypothesis of innocence. If the evidence presented is circumstantial, the court must consider whether a reasonable inference of defendant's guilt may be drawn from the circumstances. Once the court decides that a reasonable inference of defendant's guilt may be drawn from the circumstances, then it is for the jury to decide whether the facts, taken singly or in combination, satisfy [it] beyond a reasonable doubt that the defendant is actually guilty.

*Fritsch*, 351 N.C. at 379, 526 S.E.2d at 455 (citation, quotation marks, and emphasis omitted).

## Manufacturing Charges

Defendant first argues there was insufficient evidence to support the manufacturing methamphetamine and trafficking in methamphetamine by manufacture charges.

Crucial to defendant's argument, the sufficiency of the evidence to support defendant's conviction must be reviewed with respect to the theory of guilt presented to the jury. *See State v. Sullivan*, 216 N.C. App. 495, 503, 717 S.E.2d 581, 586-87 (2011) (citing *State v. Smith*, 65 N.C. App. 770, 310 S.E.2d 115, *modified and aff'd*, 311 N.C. 145, 316 S.E.2d 75 (1984)), *disc. rev. denied*, 366 N.C. 229, 726 S.E.2d 839 (2012); *Presnell v. Georgia*, 439 U.S. 14, 16, 58 L. Ed. 2d 207, 211 (1978). In this case, the jury was not instructed on acting in concert. Consequently, defendant's convictions may be upheld only if

there is evidence he committed the offenses. *See State v. McCoy*, 79 N.C. App. 273, 274, 339 S.E.2d 419, 420 (1986) ("The court failed to instruct on acting in concert. Accordingly, defendant's conviction may be upheld only if the evidence supports a finding that he personally committed each element of the offense.").

At trial, testimony was presented about the steps to produce methamphetamine using a "shake and bake" or "one pot" method. Defendant now contends the trial court erred in denying his motion to dismiss the manufacturing-related charges because there was no evidence that he performed any of the steps identified by law enforcement. We disagree.

As the State points out, this Court has previously addressed whether a defendant's presence at a place where a controlled substance is being manufactured is sufficient to withstand a motion for dismissal of manufacturing charges. In *State v. Shufford*, this Court addressed whether a defendant's presence in a house where marijuana was being manufactured was sufficient to withstand a motion for dismissal. *State v. Shufford*, 34 N.C. App. 115, 117-18, 237 S.E.2d 481, 483 (1977). Relying on *State v. Adams*, 191 N.C. 526, 132 S.E. 281 (1926), a case involving an illegal whiskey still, this Court in *Shufford*

held the defendant's presence, along with other evidence that marijuana was being manufactured in the house, was sufficient to overcome a motion for dismissal. *Shufford*, 34 N.C. App. at 118, 237 S.E.2d at 483 ("It has been held that presence at a place where illegal whiskey is being manufactured, along with other supporting evidence, is sufficient to overcome a defendant's motion for nonsuit.") Furthermore, in *Shufford*, this Court noted that in possession cases, "[t]he State may overcome a motion for a nonsuit by presenting evidence which places the accused 'within such close juxtaposition to the narcotic drugs as to justify the jury in concluding that the same was in his possession.'" *Id*. at 119, 237 S.E.2d at 483 (quoting *State v. Allen*, 279 N.C. 406, 411-12, 183 S.E.2d 680, 684 (1971)). This Court then "perceive[d] no reason why the principle of 'close juxtaposition' should not apply to manufacturing of controlled substances as well as to their possession." *Id*. at 119, 237 S.E.2d at 483-84.

In the present case, we hold a reasonable inference of defendant's guilt can be drawn from defendant's presence with Maki at the scene for the duration of the time law enforcement observed, approximately 40 minutes, along with the evidence recovered from the scene that was consistent with the production

of methamphetamine, testimony that defendant and Maki were back and forth in the area moving bottles, and testimony that defendant gave instructions to Maki to keep the smoke out of her eyes. Thus, the evidence was sufficient to withstand defendant's motion to dismiss the manufacturing-related charges and the trial court did not err.

## Possession Charges

Defendant next argues there was insufficient evidence to support the trafficking in methamphetamine by possession and possession of drug paraphernalia charges.

As previously mentioned, law enforcement searched the area where defendant and Maki were observed subsequent to taking them into custody. The search of items found at the scene resulted in the recovery of .8 grams of methamphetamine, a bottle of a liquid weighing 73.6 grams that tested positive for methamphetamine, and syringes. Defendant correctly contends that because none of the above items were found on his person, or in any property linked directly to him, the State was required to prove constructive possession. Defendant, however, further contends there was insufficient evidence of constructive possession. We disagree.

"Constructive possession exists when a person, while not having actual possession of the controlled substance, has the intent and capability to maintain control and dominion over a controlled substance." *State v. Neal*, 109 N.C. App. 684, 686, 428 S.E.2d 287, 289 (1993). "As the terms 'intent' and 'capability' suggest, constructive possession depends on the totality of circumstances in each case. No single factor controls, but ordinarily the question will be for the jury." *State v. James*, 81 N.C. App. 91, 93, 344 S.E.2d 77, 79 (1986).

In this case, the evidence tended to show that the .8 grams of methamphetamine and a syringe were found in a camouflage handbag at the scene. The handbag also contained a wallet, cosmetics, a metal spoon, and a Social Security card with Maki's name on it. The 73.6 grams of liquid containing methamphetamine was in a clear two liter bottle in a closed purple duffle bag found at the scene. Various clothing items were also in the duffle bag. Both the handbag and the duffle bag were near the other items recovered on the blanket laid out near the creek in the area where defendant and Maki were moving back and forth.

In arguing the evidence was insufficient to show constructive possession by defendant, defendant contends there is nothing indicating defendant had the intent and capability to

control the methamphetamine, syringes, or liquid containing methamphetamine because the evidence tends to show that the bags belonged to Maki. While we agree that the evidence tends to show the handbag containing the .8 grams of methamphetamine and syringe belonged to Maki, there is no evidence that the duffle bag or other items were Maki's. Defendant asserts that the clothes in the purple duffle bag were women's clothes; yet, defendant's assertion is a mischaracterization of the evidence. There is no indication in the evidence that the clothes found with the liquid in the duffle bag were women's clothes. In fact, when questioned whether there was anything in the purple duffle bag that would identify who it belonged to, Special Agent Piwowar simply stated he just found clothes and the bottle.

Reviewing the totality of the circumstances, we find there was sufficient evidence of constructive possession to present the possession-related charges against defendant to the jury. First, defendant and Maki were the only persons present during the 40 minutes that law enforcement observed. Second, both defendant and Maki moved freely around the site where all the belongings and items were laid out on the blanket. It is apparent from Special Agent Piwowar's testimony that among the items were multiple syringes, not just the syringe found in the

handbag with Maki's Social Security card. Moreover, the evidence suggests that not all the items of clothing recovered at the scene belonged to Maki. Namely, two pairs of shoes were recovered from the scene in addition to general items such as a hat and a belt. While Special Agent Tritt testified that one pair of the shoes appeared to be women's shoes, the second pair was a larger plain white pair.

Viewing the totality of the evidence in the light most favorable to the State, we hold the evidence was sufficient for the jury to find that defendant had the capability and intent to control the items that he was near and moving around. Thus, the trial court did not err in denying defendant's motion to dismiss the possession-related charges.

## Conspiracy Charge

Defendant's final argument under the first issue on appeal is that there was insufficient evidence of a conspiracy. Specifically, defendant contends there was no direct evidence of an agreement between him and Maki to traffic in methamphetamine by manufacture and there was insufficient circumstantial evidence of an agreement to support the charge. Defendant asserts the conspiracy charge was supported only by suspicion built on conjecture. Again, we disagree.

"In order to prove conspiracy, the State need not prove an express agreement; evidence tending to show a mutual, implied understanding will suffice." *State v. Morgan*, 329 N.C. 654, 658, 406 S.E.2d 833, 835 (1991) (citing *State v. Bell*, 311 N.C. 131, 141, 316 S.E.2d 611, 617 (1984)). As this Court noted in *State v. Jenkins*, 167 N.C. App. 696, 699-700, 606 S.E.2d 430, 432-33 (2005), "[a] conspiracy may be shown by circumstantial evidence, or by a defendant's behavior. Conspiracy may also be inferred from the conduct of the other parties to the conspiracy." *Id.* (citations omitted). Yet, "[w]hile conspiracy can be proved by inferences and circumstantial evidence, it 'cannot be established by a mere suspicion . . . .'" *State v. Benardello*, 164 N.C. App. 708, 711, 596 S.E.2d 358, 360 (2004) (quoting *State v. Massey*, 76 N.C. App. 660, 662, 334 S.E.2d 71, 72 (1985)).

Upon review of all the evidence in this case, we hold there was sufficient evidence to infer an implied agreement between defendant and Maki. It is undisputed that defendant was present and aware that Maki was involved in the production of methamphetamine. Moreover, as we already held, there is sufficient evidence from which a reasonable inference can be drawn that defendant was also involved in the manufacturing

process. Where two subjects are involved together in the manufacture of methamphetamine and the methamphetamine recovered is enough to sustain trafficking charges, we hold the evidence sufficient to infer an implied agreement between the subjects to traffic in methamphetamine by manufacture and withstand a motion to dismiss.

Considering the totality of the evidence in the light most favorable to the State, we hold there was substantial evidence supporting the manufacturing, possession, and conspiracy charges against defendant, even in the absence of an acting in concert instruction. As a result, we hold the trial court did not err in denying defendant's motion to dismiss.

<u>Trafficking Charges</u>

Based on the 73.6 grams of liquid that tested positive for methamphetamine, defendant was charged and convicted of three trafficking offenses. Now in the second issue on appeal, defendant contends that, even if there is sufficient evidence he was involved in the crimes, there is still insufficient evidence of the amounts alleged in the indictment to sustain the trafficking charges. Specifically, defendant argues the entire weight of a mixture containing methamphetamine at an intermediate stage in the manufacturing process cannot be used

to support trafficking charges because the mixture is not ingestible, is unstable, and is not ready for distribution. Relying on *State v. Willis*, 61 N.C. App. 23, 300 S.E.2d 420 (1983) and *State v. Perry*, 316 N.C. 87, 340 S.E.2d 450 (1986), as well as non-controlling federal cases, defendant contends it is inconsistent with the intent of the trafficking statutes to use the total weight of such mixture to support trafficking charges.

"The purpose of the [trafficking statutes] is to prevent trafficking in controlled substances." *Perry*, 316 N.C. at 101, 340 S.E.2d at 459. With that in mind, in *Willis* and *Perry*, our State's appellate courts recognized that the tough punishment scheme in the trafficking statutes was justified to deter large scale distribution of drugs, regardless of the percentage of controlled substance in the mixture. *Willis*, 61 N.C. App. at 42, 300 S.E.2d at 431, *modified and aff'd*, 309 N.C. 451, 306 S.E.2d 779 (1983); *Perry*, 316 N.C. at 101-02, 340 S.E.2d at 459. While we are sympathetic to defendant's argument that the methamphetamine recovered in this case was not yet in a usable form, we find the purpose of the trafficking statutes is still served in the present case where defendant admitted the

methamphetamine had already been formed in the liquid and it was only a matter of extracting it from the mixture.

Moreover, the trafficking statute does not specify a certain type of mixture. In *State v. Conway*, this Court addressed whether, under a prior version of N.C. Gen. Stat. § 90-95(h)(3b), "the entire weight of a liquid containing a detectable, but undetermined, amount of methamphetamine establishes a [trafficking] violation . . . ." *State v. Conway*, 194 N.C. App. 73, 78, 669 S.E.2d 40, 44 (2008). Noting the "statute [at that time was] silent on whether the weight of a liquid mixture containing detectable, but undetermined, amounts of methamphetamine is sufficient to meet the requirements set forth within the statute to constitute 'trafficking[,]'" *id.* at 79, 669 S.E.2d at 44, this Court undertook a statutory analysis and determined that if the legislature intended to include the weight of a mixture containing methamphetamine, it would have done so as it did in other subsections of the trafficking statutes. *Id.* at 82-85, 669 S.E.2d at 46-47. This Court then held the total weight of the mixture containing methamphetamine in *Conway* did not support the trafficking charges and reversed the defendant's trafficking convictions. *Id.* at 85, 669 S.E.2d at 48.

However, in 2009 the trafficking in methamphetamine statute was amended to include the "any mixture" language that *Conway* noted was omitted. N.C. Gen. Stat. § 90-95(h)(3b) now provides "[a]ny person who sells, manufactures, delivers, transports, or possesses 28 grams or more of methamphetamine *or any mixture containing such substance* shall be guilty of a felony which felony shall be known as 'trafficking in methamphetamine[.]'" N.C. Gen. Stat. § 90-95(h)(3b) (2013) (emphasis added). The statute then sets forth different punishments based on the amount of methamphetamine or mixture containing methamphetamine.

Where the statute provides that a defendant is guilty of trafficking when he manufactures "any mixture containing [methamphetamine]" meeting the minimum 28 gram weight requirement, we hold the trial court did not err in using the weight of the liquid containing methamphetamine in the present case.

### III. Conclusion

For the reasons discussed, we hold the defendant received a fair trial free of error.

No error.

Judges ELMORE and DAVIS concur.